**Enid S. REHBOCK, Plaintiff,**

v.

**Alan J. DIXON and William Cherikos, Defendants.**

**No. 78 C 317.**

United States District Court,
N. D. Illinois, E. D.

Sept. 20, 1978.

Jonas, Schey & Assoc., Chicago, Ill., for plaintiff.

William J. Scott, Atty. Gen., Chicago, Ill., for defendants.

Memorandum

LEIGHTON, District Judge.

Plaintiff Enid Rehbock, a citizen of Highland Park, Illinois, files this class action for injunctive and declaratory relief and damages allegedly arising out of the suspension of her driver's license by the Secretary of State of Illinois. She claims that absence of a meaningful chance by which she could obtain a restricted driver's permit during the suspension deprived her of due process of law in violation of the fourteenth amendment to the United States Constitution. 42 U.S.C. §§ 1981, 1983, and 1985 are invoked; and the suit is against Alan Dixon, Secretary of State of Illinois, administrator of the Illinois Vehicle Code, and William Cher-

ikos, one of his technical advisors. Jurisdiction for this action is said to rest on 28 U.S.C. § 1343. The cause is before the court on plaintiff's motion for an injunction and cross-motions for summary judgment.[1] From the complaint and affidavits which have been submitted to the court, the following are the material facts.

## I.

Plaintiff was given a citation for violating Ill.Rev.Stat. ch. 95½, § 11–1414 (1975), a provision of the Illinois Motor Vehicle Code, which states that

> The driver of a vehicle upon a highway upon meeting or overtaking, from either direction, any school bus which has stopped on the highway for the purpose of receiving or discharging pupils shall stop the vehicle before reaching the school bus . . . and the driver shall not proceed until the school bus resumes motion or the driver of the vehicle is signaled by the school bus driver to proceed *or the visual signals are no longer actuated.* The Secretary [of State] shall suspend for 30 days the drivers license of any driver convicted of violating this subsection.

She paid the requisite fine thereby conceding liability under this section. On January 6, 1978, she received a notice from the Secretary of State that pursuant to the statutory provision her license was being suspended for a thirty day period beginning on January 11, 1978. She did not appeal the suspension, although Illinois law provides for such a procedure.[2] Instead, plaintiff submitted an application for a restrict-

ed drivers permit under Ill.Rev.Stat. ch. 95½, § 6–206(c)(3) (1975) which provides:

> If the Secretary of State does not rescind his order [at the conclusion of the hearing provided in Section 2–118], he may upon application therefor, to relieve undue hardship, issue a restricted driving permit granting the privilege of driving a motor vehicle between the residence and the place of employment of such person or within other proper limits. In each case the Secretary may issue such restricted driving permit for such period as he deems appropriate . . . . A restricted driving permit issued hereunder shall be subject to cancellation, revocation and suspension by the Secretary of State in like manner and for like cause as a drivers license issued hereunder may be cancelled, revoked or suspended . . . . .

On January 9, 1978, plaintiff attended a conference with a hearing officer and presented evidence which she believed qualified her for a restricted drivers permit. She was told that a permit would be granted; but on January 23, 1978, plaintiff received notice that her application had been denied, effective January 13, 1978. This notice, a form letter from the Secretary of State, advised plaintiff that:

> This office is in receipt of your recent application for a Restricted Driving Permit. *Due to the seriousness of this type of conviction,* your request for a Restricted Driving Permit has been denied January 13, 1978.
>
> In order for this Office to reconsider your application, it will be necessary that you appear before the Board of Review . . .

**1.** Initially, defendants moved to dismiss plaintiff's suit, with supporting affidavits. The court treated the motion as one for summary judgment after the parties were given notice and an opportunity to submit additional affidavits. See Rule 12(b)(6), Fed.R.Civ.P. Thereafter, plaintiff filed a cross-motion for summary judgment.

**2.** Ill.Rev.Stat. ch. 95½, § 2–118(a) (1975) provides:

> Upon the suspension, revocation or denial of the issuance of a license, permit or registration or certificate of title under this Act of any person the Secretary of State shall imme-

diately notify such person in writing and upon his written request shall, within 20 days after receipt thereof, set a date for a hearing and afford him an opportunity for a hearing as early as practical, in either the County of Sangamon or the County of Cook as such person may specify, unless both parties agree that such hearing may be held in some other county.

After formal hearings are held, the suspension of a license is subject ultimately to judicial review under the Illinois Administrative Review Act, Ill.Rev.Stat. ch. 110, §§ 264 *et seq.* (1975). Ill.Rev.Stat. ch. 95½, § 2–118(e)(1975).

In lieu of the above, you may make a written request for a formal hearing under Section 2–118 of the Illinois Vehicle Code. Such hearings are held in Chicago and Springfield, only.

Plaintiff made arrangements to appear before the Board of Review and obtain reconsideration of the adverse decision which was rendered after the informal conference of January 9, 1978. The parties have submitted affidavits to support their version of what transpired thereafter.

Mr. Jonas, plaintiff's attorney, avers that on January 24, 1978, he went to the office of the Secretary of State to request an appointment for a hearing before the board of review described in the notice. He claims he was told that he could not obtain an appointment until sometime after February 11, 1978, the termination date of plaintiff's suspension. In addition, plaintiff's attorney was informed, that

even if they could schedule a board of review prior to the termination date of plaintiff's suspension that the instructions of all of the hearing officers of such board of review from [Alan Dixon, the Secretary of State] was [sic] to the effect that absolutely no restrictive permits would be issued to such persons who had been convicted of violating Section 11–1414 of Chapter 95½ of the Illinois Revised Statutes, 1977, relating to the overtaking of a school bus.

After being so informed, plaintiff's attorney felt aggrieved and was given the opportunity to talk to the Secretary of State's technical advisor, William Cherikos, and vent his disapproval of the policy. He states in his affidavit

a. That WILLIAM A. CHERIKOS, as technical advisor for the Secretary of State had complete authority to speak for the defendant, ALAN J. DIXON, relative to the policy of the office of the Secretary of State relating to the refusal of the Secretary of State, in *all* cases, (emphasis added) relating to those persons whose driving privileges were suspended by reason of convictions for violating the act relating to the overtaking of a school bus.

b. That when your Affiant indicated to the defendant, WILLIAM A. CHERIKOS, that this mandate of the defendant, ALAN J. DIXON, to deny all persons the right to obtain a restricted driving permit resulted in the denial to those persons of a fair, impartial and non-arbitrary hearing which was mandated both by the Statutes of the State of Illinois and the Constitution of the United States to which the defendant, WILLIAM A. CHERIKOS, replied "That is the policy of Mr. Dixon and there are to be no exceptions".

c. That your Affiant then stated to Mr. Cherikos that this interpretation and procedures of the Secretary of State gave less rights to those persons convicted of overtaking a school bus than those persons convicted of reckless homicide or driving while intoxicated to which the defendant, WILLIAM A. CHERIKOS, replied, "That's too bad."

Mr. Cherikos, in a sworn affidavit, states: That he recently had a telephone conversation with an attorney for Anid S. Rehbock [sic], and after discussing various aspects of this particular situation says that he at no time told this person that the client could not have a formal hearing in order to appeal the denial of a Restricted Driving Permit in this matter.

It is worth noticing that Mr. Cherikos does not refute it is the policy of the Secretary of State to deny all applications for restricted driving permits in cases where the application arises out of a suspension of driving privileges under Ill.Rev.Stat. ch. 95½, § 11–1414 (1975).

### II.

On these facts, defendants advance six grounds for dismissal of plaintiff's complaint. 1. No constitutionally protected right is at stake in this controversy because plaintiff has no property interest in a restricted driving permit. 2. Plaintiff has never attempted to avail herself of her stat-

utory right to review of the Secretary's decision, it being clear that she never requested an appeal. 3. The claim is moot because plaintiff's license has been restored. 4. Plaintiff has failed to exhaust her administrative remedies. 5. This court should abstain from exercising jurisdiction over this case. 6. No class action has been stated.[3]

Opposing these grounds, plaintiff argues that she was not required to make a written request for a hearing on her appeal; that she had a constitutional right to a fair hearing which was abrogated and made meaningless by the state policy; that the effect of the putative class action and the claim for money damages is to preclude any finding that this action is moot; and that this court cannot abstain or dismiss for want of exhaustion because the administrative remedies provided at state law are inadequate and invocation of them would have been futile. After reviewing these arguments, the court concludes that defendants' motion for summary judgment should be granted because they are entitled to judgment as a matter of law.

### III.

### A.

*The Due Process Claim*

The fundamental question is whether state authorities were required, as a matter of constitutional law, to give plaintiff a hearing on her application for a restricted driving permit, and some avenue for review of any decision rendered. If a hearing was not constitutionally mandated, plaintiff's case must be dismissed for failure to state a claim on which relief can be granted insofar as the due process claim is concerned. If a hearing was constitutionally mandated, this court is obliged to inquire into the adequacy of the procedures used by the state in denying her application.

The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. As this amendment may apply to this case, plaintiff would not be entitled to a hearing unless the application for, and the denial of, a restricted driving permit involved the deprivation of some liberty or property interest. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff does not claim that she was stigmatized by her failure to obtain a restricted driving permit, nor does she claim in any other respect that a liberty interest was affected in this case. Thus, her claim is essentially that a property interest was affected.

■ It is clear that a license, once issued, gives rise to a property interest.

> Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involved state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971).

In this case, however, this court is concerned with the right to a restricted drivers permit which would have conferred on plaintiff the privilege[4] of driving to and from work during the course of a concededly valid suspension.

■ The guidelines for determining whether a property interest has been affected in this case were set forth in *Board of Regents v. Roth, supra,* where the Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must

**3.** Although this action is styled as a class action, plaintiff has not moved for certification of a class pursuant to Rule 23, Fed.R.Civ.P.

**4.** Initially, defendants seek to eschew the constitutional issues in this case on the ground that a restricted drivers permit is a privilege.

However, it is clear that constitutional rights do not turn on whether a benefit accorded by the state can be called a "right" or a "privilege." See *Graham v. Richardson*, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

\* \* \* \* \* \*

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. 408 U.S. at 577, 92 S.Ct. at 2709.

Thus, it is clear that sufficiency of plaintiff's claim of entitlement must be examined in light of state law to determine if there are rules or mutually explicit understandings in support of plaintiff's assertion that she had the right to a restricted driver's permit during the suspension of her license. See *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ Although this court is not guided in its interpretation by any state court decision, the statute on its face does not provide an objectively reasonable basis to support plaintiff's claim of entitlement to a restricted drivers permit. The statute provides that "the Secretary of State . . . may upon application therefor, to relieve undue hardship, issue a restricted driving permit granting the privilege of driving a motor vehicle between the residence and the place of employment of such person or within other proper limits. In each case the Secretary may issue such restricted driving permit for such period as he deems appropriate . . . ." Ill.Rev.Stat. ch. 95½, § 6–206(c)(3) (1975). Clearly, then, the thirty day suspension which went into effect unchallenged sharply abrogates the assertion that plaintiff had a reasonable expectancy of a restricted drivers permit and the privilege to operate a motor vehicle during the suspension. Therefore, although it must be readily conceded that a property interest was affected when plaintiff's license was suspended, this court concludes that no property interest was affected when plaintiff's application for a restricted drivers permit was denied. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

### B.

■ Even if this court were to find that a property interest was affected, it would be compelled to hold that plaintiff was not denied due process of law.

■ It is clear that what due process requires under any given circumstance depends on the nature of the government function involved, as well as the private interest which is affected by government action. *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Fundamentally, due process requires that an individual be afforded some sort of hearing before he is finally deprived of a property interest; that is, an opportunity to be heard at a meaningful time and in a meaningful manner. See *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Armstrong v. Manzo, *380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)*; Grannis v. Ordean, *234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)*. *The Supreme Court has held that in order to determine what safeguards must be provided in addition to these fundamental requisites of due process, the following factors must be considered:*

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In this case, the interest at stake was plaintiff's desire to obtain a restricted drivers permit for a thirty day period, the dura-

tion of a validly imposed suspension of her license. This suspension was entered in accordance with a legislative mandate that those individuals who violate Ill.Rev.Stat. ch. 95½, § 11–1414 (1975) shall have their licenses suspended automatically. This mandate is part of a statutory scheme designed to protect children who ride school buses. Quite simply, plaintiff's interest is neither substantial nor compelling. Her interest, to the extent that it existed, was vastly outweighed by the state's interest in assuring prompt enforcement of its vehicle laws and the protection of its citizens as they travel the highways of the state. If it is true that defendants have a policy of denying requests for drivers permits similar to plaintiff's by the application of valid criteria, i. e., the seriousness of the offenses, to the facts and circumstances of the case, there could be no prospect of an erroneous deprivation of plaintiff's interest; plaintiff having admitted she violated the statute in question. Additional or substitute procedures are not, under these circumstances, warranted. The procedure used by defendants afforded plaintiff an opportunity to obtain a permit through the presentation of evidence before a hearing officer. The Constitution does not require more.

## C.

### Equal Protection Claim

In her complaint, plaintiff claims that defendants' actions constitute a denial of equal protection of the laws insofar as they indicated that there would be no reconsideration of her application in light of the avowed policy of the Secretary of State. Although this claim is not asserted in a purely abstract setting the facts, as explicated in the affidavits before the court, reveal: (1) there is no basis for plaintiff's assertion that her lawyer was told that she could not have an appointment with a Board of Review; and (2) even if plaintiff was somewhat discouraged about her prospects of obtaining a fair and prompt hearing before a Board of Review, the facts are clear that she never attempted to pursue her alternate remedy of requesting a for-

mal hearing under Ill.Rev.Stat. ch. 95½ § 2–118 (1975). In short, the facts reveal that reconsideration was available. Plaintiff's claim then, is essentially, that pursuing any mode of reconsideration would have been futile because of the avowed policy of denying restricted drivers permits to individuals similarly situated.

In its letter of January 20, 1978, the Office of the Secretary of State informed plaintiff, after a preliminary hearing was conducted, that her application had been denied. Clearly and succinctly, she was apprised that "due to the seriousness of this type of conviction, your request for a Restricted Driving Permit has been denied January 13, 1978." Fairly read, this statement constitutes a policy guideline, nothing more, nothing less. Thus, the question is whether this policy, which was based on an administrative classification, results in a denial of equal protection of the laws.

■■■■ The law is clear. The unfair and discriminatory administration of a law, neutral on its face, can result in a violation of the equal protection clause. See *United States ex rel. Pedrosa v. Sielaf*, 434 F.Supp. 493, 497 (N.D.Ill.1977). See also, *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Although administrative classifications may give rise to an equal protection claim, see *Buckley v. Coyle Public School System*, 476 F.2d 92 (10th Cir. 1973), "in the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976). If, as alleged, defendants have a policy of denying restricted drivers permits to those drivers who have admitted violating Ill.Rev.Stat. ch. 95½, § 11–1414 (1975), this classification bears a reasonable and rational relationship to the avowed statutory policy of suspending the driving privileges of an individual who has violated that code provision. The offense set forth in the statute is serious, since a violation of this provision and a failure to heed the precautions attendant to

passing a school bus at rest may very well pose a significant threat to the bodily well-being of the children of the state of Illinois. Denial of a permit, in the exercise of the discretion reposed with the Secretary of State, and on the ground that the offense is of such a character as to preclude a restricted drivers permit, bears a rationale relationship to the statutory scheme promulgated by the Illinois legislature. Therefore plaintiff's equal protection claim must be dismissed.[5]

### IV.

This court concludes that as a matter of law judgment must be entered in favor of defendants and against plaintiff since it is clear she has failed to state a claim on which relief can be granted. Plaintiff has no constitutionally protected property interest in a restricted drivers permit. Denial of her application for a restricted drivers permit because the offense she committed was serious enough to mandate suspension of her driving privileges was not a denial of equal protection of the laws. A judgment order consistent with the views expressed in this memorandum will be entered forthwith.

So ordered.

---

**5.** Plaintiff purports to state a claim for relief under two other civil rights provisions. The first claim purports to arise under the Civil Rights Act of 1870, 42 U.S.C. § 1981 which provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The present codification proscribes racial discrimination whether it be directed against white or black citizens. See *McDonald v. Santa Fe Trial Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Despite its breadth, to state a claim under 42 U.S.C. § 1981, plaintiff still must allege that she has been denied a right which, under similar circumstances, would have been accorded to a person of a different race. *Willis v. Chicago*

*Extruded Metals Co.*, 358 F.Supp. 848 (N.D.Ill. 1973). Thus plaintiff must allege racially discriminatory conduct in order to state a claim under this section. See *Spencer v. Community Hospital of Evanston*, 393 F.Supp. 1072, 1078–1079 (N.D.Ill.1975). See also, *Tramble v. Converters Ink Co.*, 343 F.Supp. 1350 (N.D.Ill. 1972). Plaintiff's failure to make and support such allegations renders this claim fatally defective. Accordingly, it must be dismissed.

Plaintiff's second statutory claim purports to arise under 42 U.S.C. § 1985, which in pertinent part proscribes conspiracies to deprive persons of equal protection of law or equal privileges and immunities. Plaintiff's failure to allege and manifest some racial or otherwise class-based, invidiously discriminatory animus behind defendants' actions, designed to deprive plaintiff of rights guaranteed by the fourteenth amendment, renders her claim defective. See *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538 (7th Cir. 1975); *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972).