In accordance with the Memorandum filed this day and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs Ohio River, Agri-Trans, and Federal Barge Lines shall have judgment on their claims for property damages and interest against defendants Great Lakes Carbon and Eagle Marine in the following amounts: Ohio River, $10,506.40 plus 10% interest from July 13, 1979; Agri-Trans, $2,778.75 plus 10% interest from May 31, 1979; Federal Barge Lines, $43,205.44 plus 10% interest from August 15, 1979; costs shall be taxed against defendants Great Lakes and Eagle Marine.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the property damages and interest awarded to plaintiffs in this action shall be allocated against defendant Great Lakes Carbon and defendant Eagle Marine equally; each defendant shall pay 50% of each plaintiff's award of damages and interest.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that plaintiff Ohio River shall have judgment against defendant Great Lakes Carbon on Ohio River's claim for attorneys' fees in the amount of $15,719.00.

John DOE, et al., Plaintiffs,

v.

Jim EDGAR, Defendant.

No. 82 C 2734.

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1982.

Alan M. Freedman, Bruce H. Bornstein, Freedman & Bornstein, Larry A. Davis, Davis & Reibman, Chicago, Ill., for plaintiffs.

Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an action brought under the Civil Rights Act, 42 U.S.C. § 1983, for declaratory and injunctive relief by persons who have been convicted at least twice of driving under the influence of alcohol. Before the court is defendant's motion to dismiss for failure to state a claim upon which relief may be granted. We grant defendant's motion.

We assume the facts as stated by plaintiffs. Plaintiffs bring this action to challenge the policy of defendant Jim Edgar, Secretary of State of Illinois, pertaining to persons with more than one conviction for driving under the influence of alcohol ("drunken driving"). Edgar's policy is to refuse to consider reinstating the driver's licenses of such persons or granting them restricted driving permits until five years after the date of the revocation of their licenses. Plaintiffs, as representatives of these persons, contend that Edgar's policy violates the equal protection and due process clauses of the Constitution. They seek class certification.

### Due Process Claims

The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property without due process of

law. Plaintiffs do not claim that they were stigmatized by their failure to obtain reinstatement of their driver's licenses or issuance of a restricted driving permit, nor do they claim in any other respect that a liberty interest was affected in this case. Thus, their due process claim is limited to the alleged deprivation of their property.

■ Edgar moves to dismiss this action, claiming that neither reinstatement of a driver's license nor issuance of a restricted driving permit are protected property interests within the meaning of the due process clause. The statutes providing for reinstatement or issuance of a restricted driving permit buttress Edgar's argument. Reinstatement is governed by Ill.Rev.Stats. ch. 95½, § 6–208(b), which provides:

Any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license or permit or privilege renewed or restored. However, such person may make application for a license as provided by Section 6–106 of this Act:

(1) If the revocation was for a cause which has been removed, at any time; or

(2) After the expiration of 1 year from the date of revocation, and upon payment of the reinstatement fee set out in subsection (g) of Section 6–119.

In either event, the Secretary of State shall not issue such license unless and until he is satisfied after investigation of such persons that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare.

The restricted driver's permit provision, Ill. Rev.Stats. ch. 95½, § 6–205(c), provides:

Whenever a person is convicted of any of the offenses enumerated in this Section, the court may recommend and the Secretary of State in his discretion, without regard to whether such recommenda-

tion is made by the court, may, if application is made therefor, issue to such person a restricted driving permit granting the privilege of driving a motor vehicle between his residence and his place of employment or within other proper limits, except that this discretion shall be limited to cases where undue hardship would result from a failure to issue such restricted driving permit. In each case the Secretary of State may issue such restricted driving permit for such period as he deems appropriate, except that such permit shall expire within one year from the date of issuance.

The plain language of these statutes indicates that plaintiffs had neither a reasonable expectancy of a restricted driving permit nor a reasonable expectancy of reinstatement of their driving privileges. Both statutes place great discretion in the Secretary of State.

Plaintiffs contend, however, that they have a protected property interest because Edgar has established a set of procedures that plaintiffs must go through in order to qualify for reinstatement or a restricted driving permit. Plaintiffs fail to cite any authority for this proposition. The court in *Rehbock v. Dixon,* 458 F.Supp. 1056 (N.D. Ill.1978), examined the statute providing for restricted driving permits and concluded that, although a property interest was affected when plaintiff's license was suspended, no property interest was affected when plaintiff's application for a restricted driving permit was denied. *Id.* at 1061. Absent a protected property interest, plaintiffs' due process claims fail. The rationale of *Rehbock* applies both to plaintiffs' attempts to obtain reinstatement of their driver's licenses and to their attempts to obtain restricted driving permits. We dismiss plaintiffs' due process claims.[1]

*Equal Protection Claims*

Plaintiffs assert that the alleged policy as to reinstatement and issuance of restricted

---

1. In their complaint, plaintiffs claim that the statute creates an irrebuttable presumption that a driver who has more than one drunken driving conviction on his record is not qualified to have his driver's license reinstated or a restricted driver's permit issued. The Supreme

Court decisions striking down irrebuttable presumptions involved deprivations prior to a hearing. *See, e.g., Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (a person whose driver's license is about to be suspended for failure to post a bond adequate to cover

driving permits to persons convicted more than once (1) creates an irrational distinction between those drivers who have one drunken driving conviction and those who have more than one drunken driving conviction; and (2) creates an irrational distinction between drivers with more than one drunken driving conviction and drivers who have been guilty of other serious driving offenses. Edgar contends that there is no equal protection violation because (1) plaintiffs are seeking treatment similar to dissimilarly situated persons; and (2) the challenged classifications are rationally related to substantial state interests.

■ Plaintiffs' first contention is that they are members of a class of serious offenders, including those convicted of manslaughter or reckless homicide, driving on a revoked or suspended license, drag racing, and auto theft, and persons involved in accidents causing death or serious injury. We reject the argument that plaintiffs are similarly situated with such persons.

■ Plaintiffs cite *Miller v. Carter*, 547 F.2d 1314 (7th Cir.1977), aff'd, 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603. At issue in *Miller* was a Chicago ordinance which treated applicants for chauffeurs' licenses differently from persons already holding chauffeurs' licenses. Under the ordinance, applicants were denied licenses if they had been convicted of certain felonies, whereas licensed persons who committed one of these felonies did not have their licenses automatically revoked upon conviction. The Court held the different treatment accorded appli-

cants and previously licensed persons irrational and in violation of the Equal Protection Clause. There is nothing in the instant case which is comparable to the pointless distinction between applicants and licensed persons in *Miller*. Here, the distinction between drunken drivers and other persons is plainly justifiable. Non-alcoholic driving offenses are fundamentally different from alcoholic driving offenses. The sober driver is usually in control of his faculties, whereas the drunken driver is not. The drunken driver is a menace the moment he gets behind the wheel. His mere act of driving is the offense, not his mismanagement of the vehicle. With luck, he may drive without mishap, but he is dangerous nonetheless. We agree with the Court in *State v. Kent*, 87 Wash.2d 103, 549 P.2d 721, 726 (1976), that the state may rationally distinguish between drivers whose offenses are alcohol related and drivers "whose traffic violations arise from poor driving habits or some other source."

Plaintiffs also cite *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), in which the Court struck down an Oklahoma statute providing for sterilization of habitual criminals. The Court held that, because the statute included larceny (as well as larceny by fraud) but exempted the nearly equivalent crime of embezzlement, the statute denied equal protection. Here, however, unlike the crimes of larceny and embezzlement, the crimes of drunken driving and manslaughter are not of the same species. This is also true of the other kinds of con-

damages allegedly resulting from an accident must be given an opportunity to present evidence of ultimate nonliability in order to prevent the suspension); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (an unwed father must be given a chance to prove his fitness as a parent in a custody proceeding); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (a student who applied to a state university from out-of-state and who seeks reduced tuition as a resident must be given an opportunity to prove that he has become a bona fide resident); *United States Dep't of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (a person seeking foodstamps but living with someone declared as a tax dependent by a

non-needy individual must be given a chance to prove that he is genuinely needy); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (a public school teacher beyond the fourth month of her pregnancy must be given an opportunity to show that she is fit to continue teaching). Here, however, plaintiffs were afforded a hearing on the drunken driving charge prior to revocation of their licenses. Furthermore, the Supreme Court and the Seventh Circuit have been reluctant to extend the irrebuttable presumption doctrine into new areas. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974); *Cozart v. Winfield*, 687 F.2d 1058, 1062 (7th Cir.1982).

duct which plaintiffs seek to classify with drunken driving.

*The Rational Relationship Test*

Plaintiffs claim that Edgar's policy is irrational because it makes no distinction between the driver who has been convicted of drunken driving twice this week and a driver who was convicted of drunken driving once this week and once twenty years ago. But the refusal to forgive the twenty year old conviction is entirely consistent with the objective of deterring drunken driving. The driver with one conviction, no matter when it was, is on notice that a second conviction will result in a five year loss of his driving privilege. The Secretary of State could reasonably conclude that his policy will have a tendency to deter drivers with one conviction from driving when they have had something to drink. *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). Whether the policy actually has a demonstrable deterrent effect is not controlling. The question is whether the policy has a rational relationship to the objective of deterring drunken driving, and we hold that it does.

*Conclusion*

For the above reasons, we grant Edgar's motion to dismiss.