John DOE and Richard Roe, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Jim EDGAR, Secretary of State, State of Illinois, Defendant-Appellee.

No. 83–1197.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1983.

Decided Nov. 22, 1983.

Bruce H. Bornstein, Freedman & Bornstein, Chicago, Ill., for plaintiffs-appellants.

Thomas P. Marnell, Chicago, Ill., for defendant-appellee.

Before PELL and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

Plaintiffs-appellants challenge the Illinois Secretary of State's policy of denying reinstatement of a driver's license or issuance of a restricted driving permit to individuals solely because they have two or more convictions for driving under the influence of alcohol and five years have not elapsed since the date of the latest revocation. At issue on appeal are: (1) whether the Secretary's policy with respect to the license and restricted driving permit violates the Equal Protection Clause of the Fourteenth

* Robert A. Grant, Senior District Judge of the Northern District of Indiana, sitting by designa-
tion.

Amendment, and (2) whether the policy with respect to the restricted driving permit violates the Due Process Clause of the Fourteenth Amendment.

## I. FACTS

Appellants each have at least two record convictions for violating Illinois Revised Statutes ch. 95½, § 11–501 prohibiting driving under the influence of alcohol (DUI). Appellants do not challenge the validity of those convictions. Under Illinois law, the Secretary of State, upon learning of a driver's conviction for DUI, must revoke the driver's license of such offender. Ill.Rev. Stat. ch. 95½, § 6–205(a)(2) (1981). The Secretary revoked appellant Doe's license for DUI the last time in October 1979 and appellant Roe's license for the same offense the last time in October 1978.

The Illinois Vehicle Code provides two principal avenues of relief to an offender whose license has been revoked for DUI. First, the offender may apply for reinstatement at the expiration of one year from the date of revocation. The Secretary is authorized to reinstate the license only if he is satisfied after investigation that the applicant will not endanger the public safety by operation of a motor vehicle. Ill.Rev.Stat. ch. 95½, § 6–208(b) (1981). Second, the offender may at any time apply for a restricted driving permit entitling him to operate a motor vehicle between his residence and place of employment or within other speci-

fied limits. The Secretary's authority to issue a permit is limited to cases where in his discretion undue hardship would result from a total suspension of the driving privilege. Ill.Rev.Stat. ch. 95½, § 6–205(c) (1981). Appellants applied to the Secretary for reinstatement of their licenses or, alternatively, for issuance of restricted driving permits, and both exhausted their administrative remedies pursuant to Illinois Revised Statutes ch. 95½, § 2–118.[1] The Secretary denied appellants all relief.

Appellants contend that the Secretary denied them relief solely because of his blanket policy[2] against reinstating the license of, or issuing a restricted driving permit to any twice-convicted DUI offender until five years have elapsed since the date of the latest revocation. Appellants brought a class action suit in federal court alleging that the Secretary's policy with respect to the reinstatement of the license and the issuance of the restricted driving permit violates both the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. The Secretary filed a motion to dismiss for failure to state a claim upon which relief may be granted, and the district court, 562 F.Supp. 66, granted the motion on December 30, 1982. On appeal from the district court's ruling, appellants raise all the constitutional arguments they raised below save one; they no longer argue that the Secretary's policy with respect to the

---

1. Section 2–118 provides in part:
   Upon the suspension, revocation or denial of the issuance of a license, permit or registration ... of any person the Secretary of State shall immediately notify such person in writing and upon his written request shall, within 20 days after receipt thereof, set a date for a hearing and afford him an opportunity for a hearing as early as practical ....
   Under § 2–118(e) the action of the Secretary of State ultimately is subject to judicial review in the circuit court of the appropriate county.

2. The "Procedures and Standards for the Issuance of Restricted Driving Permits and Reinstatement of Revoked Drivers Licenses by the Office of the Secretary of State" provides at section III.B.1.:
   To be considered for reinstatement, applicants who have two or more DUI convictions

on their driving records may not be considered until at least five (5) years have elapsed since the date of the latest revocation. This is to provide a showing that the applicant, if restored to his driving privileges, and especially if the applicant has been reinstated once prior to the latest application, will not be a danger to the public safety or welfare on the highways.
The same publication states at section IV.A.2.:
   No restricted driving permits will be granted to applicants who have two or more DUI convictions on their records. Any waivers from this prohibition must be requested in writing with a full explanation of the circumstances, efforts made at rehabilitation and other relevant evidence to be considered.
The policies went into effect on January 1, 1982.

reinstatement of the license itself violates the Due Process Clause.

## II. DISCUSSION

### A. Equal Protection

The first step in judging the merits of appellants' equal protection claim is to determine the correct standard of constitutional review. Under traditional equal protection doctrine, a classification will be subject to strict scrutiny, and upheld only if necessary to promote a compelling governmental interest, if it impinges upon a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Appellants do not argue, and we do not find that the Secretary's classification impinges upon any fundamental right. Nor do we find that twice-convicted DUI offenders constitute a suspect class; that label has been reserved for groups "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Accordingly, the Secretary's classi-

fication is merely subject to rational basis scrutiny and will be upheld if it bears a rational relationship to a legitimate governmental interest. *Massachusetts Board of Retirement v. Murgia, supra; French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976).

Appellants maintain that the Secretary's policy is irrational because it applies only to twice-convicted DUI offenders and not to other individuals whose serious traffic offenses,[3] such as reckless homicide, also result in stringent penalties such as mandatory license revocation. We do not find appellants' argument convincing. The Secretary's classification distinguishes between drunk drivers, whose driving judgment is continuously impaired while operating a motor vehicle, and sober drivers, who in the course of driving may commit an error of judgment but who are not a constant threat when operating a vehicle.[4] The danger to the public posed by the former group is greater, being continuous while the vehicle is being operated, and this principled distinction amply supports the Secretary's classification.[5]

The tenor of the appellants' argument might seem to be that the second conviction for DUI should be equated for equal protection clause purposes with one conviction of a single violation of other types of vehicular accident felonies. This would be a frivolous position to take as the Secretary's policy is

---

**3.** Under Ill.Rev.Stat. ch. 95½, § 6–205, the Secretary must revoke the license of those individuals convicted of certain offenses, among which are:

(1) Manslaughter or reckless homicide resulting from the operation of a motor vehicle;

(2) Conviction upon 3 charges of reckless driving committed within a period of 12 months; and

(3) Violation of the prohibition on drag racing.

Under Ill.Rev.Stat. ch. 95½, § 6–206(a)(4), the Secretary may revoke the license of an individual who has by unlawful operation of a motor vehicle caused an accident resulting in death or personal injury.

**4.** Section 6–205 also requires the Secretary to revoke the license of individuals convicted of any one of the following offenses:

(1) Any felony under the laws of any state or the federal government in the commission of which a motor vehicle was used;

(2) Leaving the scene of a traffic accident involving death or personal injury;

(3) Perjury or the making of a false affidavit relating to the ownership or operation of a motor vehicle;

(4) Automobile theft; and

(5) Violation of regulatory laws regarding motor vehicles used for transportation of passengers and motor vehicles for hire.

Again, these offenders do not endanger the public from the moment they sit behind the wheel as do drunk drivers.

**5.** We recognize that there may be convictions arising out of accidents which involve serious injuries or death and which have as a causal factor the over-consumption of alcoholic products. If such would be the case, we have no reason to think that the prosecuting attorney would not also seek a DUI conviction. In any event, this is not the type of situation on which appellants base their equal protection claim.

predicated on a recidivist situation. Assuming as we must that the appellants are intending to equate the non-DUI serious traffic offenders who have had a second conviction with the DUI second convicted offender, the comparison simply fails in our opinion. Of course, if a person just does not have the ability because of physical or mental defects to be a safe driver, he or she should not be licensed in the first place, or continue to have a valid license when the disability is found to exist. The Secretary has other means to keep such drivers off the highways and their situation is not involved in the present scenario. In our opinion the Secretary could rationally find a twice-convicted DUI offender more dangerous to the public welfare than he would an individual who has two manslaughter driving convictions even though in this case the underlying causal situation might be more than egregious error of judgment which would justify other procedures leading to license revocation.

Finally, important policy reasons support the Secretary's policy. Drunk driving is related to one-half of the nation's highway fatalities.[6] In Illinois, recent years have seen a continuous increase in the number of reported DUI offenses.[7] The Secretary's policy combats a serious problem by removing current repeat offenders from the road deterring potential offenders.

Appellants strenuously argue that the Secretary's policy is irrational because there is no restriction on the length of the interval between DUI convictions; the Secretary could use a remote conviction for purposes of triggering the five-year rule. We again find appellants' argument unconvincing. We do not regard as irrational the Secretary's policy that an individual who has been once convicted of DUI should face an extremely strong deterrent against ever again endangering his own life or the life of others by driving while intoxicated. The Secretary's policy may seem harsh to those involved, but we cannot say it would not serve the purpose of discouraging recidivist drunk driving and it certainly is within the bounds of minimum rationality. In any event, even the appearance of harshness tends to fade when compared to the laws now existent in many countries where the convicted driver's loss of freedom by immediate incarceration is more drastic than in this country as opposed to the relatively minor deprivation of not being able to drive a motor vehicle legally.

### B. Due Process

■ Appellants contend that their individualized hearings for a restricted driving permit were a meaningless formality because the Secretary established an irrebuttable presumption against issuance and that the Secretary thereby deprived them of due process of law. The threshold issue raised by appellants' contention is whether appellants have a property interest[8] in the restricted driving permit. We hold that they do not.

| Year | Number of Reported and Verified DUI Offenses |
|---|---|
| 1981 | 22,522 |
| 1980 | 19,881 |
| 1979 | 16,808 |
| 1978 | 16,106 |

Source: Department of Law Enforcement, Division of Support Services, Bureau of Identification, *Crime in Illinois,* Tables 43–45 (1977–1981). Data for the years 1980 and 1981 include statistics supplied by the Secretary of State.

**6.** Little, *Administration of Justice in Drunk Driving Cases,* 58 A.B.A.J. 950, 950 & n. 1 (1972).

**7.** Between 1980 and 1981, the number of reported and verified DUI offenses increased from 19,881 to 22,522, representing a 13.3% increase. These statistics do not include Chicago Police Department data. Between 1978 and 1981 there was a 39.8% increase in the number of reported and verified DUI offenses, although this figure is somewhat unreliable because of a change in reporting techniques. The statistics for the four-year period are as follows:

**8.** Appellants do not claim that the denial of a restricted driving permit injured their reputations or in any other way impaired their liberty interest. Accordingly, we confine our due

Although an individual does have a property interest in his driver's license, *see Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971), once that individual loses his license pursuant to a valid conviction and he exhausts his administrative remedies, his property interest in that license terminates. The driver may then apply for a restricted driving permit, but the plain wording of the statute governing the issuance of restricted driving permits [9] reveals that the applicant has a mere unilateral expectation of issuance and not a legitimate claim of entitlement to it. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Rehbock v. Dixon,* 458 F.Supp. 1056, 1060–61 (N.D.Ill.1978). It is true that despite the wording of the statute, the Secretary's regulations could create a property interest if they enumerated specific requirements, the fulfillment of which would result in issuance, or at least result in the reasonable expectation of issuance. The regulations applicable in this case, namely the policy itself, do not however enumerate such requirements and hence are unavailing to appellants in their quest to find a property interest in the restricted driving permit.

Moreover, even if we were to assume for the sake of argument that appellants had a property interest in the restricted driving permit, appellants would still fail to state a claim under the irrebuttable presumption doctrine. First, it is simply wrong to characterize the Secretary's policy as an irrebuttable presumption; the policy specifically allows the Secretary to waive the five-year rule. The "Procedures and Standards for the Issuance of Restricted Driving Permits and Reinstatement of Revoked Drivers Licenses by the Office of the Secretary of State" provides in pertinent part: "No restricted driving permits will be granted to applicants who have two or more DUI convictions on their records. *Any waiver from this prohibition must be requested in writing, with full explanation of the circumstances, efforts made at rehabilitation and other relevant evidence to be considered."* *Id.* at 5. [Emphasis added.] Appellants allege that although waiver is a theoretical possibility, the Secretary to date has in fact never waived the five-year rule. Even assuming the correctness of appellants' allegation, in light of the fact that the policy has only been in effect since January 1, 1982, appellants are not justified in ignoring the waiver provision and leaping to the conclusion that the Secretary's policy is an irrebuttable presumption against issuance. Second, even if the Secretary in fact will never grant a waiver and our reliance on the waiver provision is misplaced, we still could not find that the policy deprives appellants of due process. The Secretary has made a quasi-legislative determination that twice-convicted DUI offenders are not entitled to be evaluated under the undue hardship standard. We have already determined that such treatment of twice-convicted DUI offenders is rationally related to a legitimate governmental interest. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court held that absent invidious discrimination, such rational substantive standards are not open to irrebuttable presumption challenges. *See id.* at 768–70, 95 S.Ct. at 2468–69. Accordingly, our equal protection analysis forecloses successful arguing of the irrebuttable presumption doctrine.

## CONCLUSION

Having considered all the arguments urged by the parties to this appeal, we conclude that appellants suffered no violation of their equal protection or due process rights. The ruling of the district court granting defendant's motion to dismiss for

process discussion to the issue of property deprivation.

**9.** Ill.Rev.Stat. ch. 95½, § 6–205(c) provides in pertinent part:
    Whenever a person is convicted of any of the offenses enumerated in this section, ... the

Secretary of State *in his discretion ... may* issue to such person a restricted driving permit ... except that this *discretion shall be limited to cases where undue hardship would result from failure to issue such restricted driving permit.* [Emphasis added.]

failure to state a claim upon which relief may be granted is

AFFIRMED.