Ronney Lee **ELLIOT**,
Plaintiff-Appellant,

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Defendant-Appellee.**

**No. 84–1495.**

Court of Appeals of Iowa.

Sept. 24, 1985.

---

**2.** Thomas is the natural father of one and the father by adoption of the second.

David M. Engelbrecht of Engelbrecht, Ackerman & Hassman, Waverly, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen., and David A. Ferree, Asst. Atty. Gen., for defendant-appellee.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

PER CURIAM.

Ronney Lee Elliot was arrested for operating a motor vehicle while under the influence of alcohol. Elliot testified in court that he was taken to a holding room prior to the administration of his breath test pursuant to Iowa Code chapter 321B. He claimed he was alone in the room and smoked a cigarette within fifteen minutes of the test. The police officer who helped administer the breath test, testified that Elliot did not smoke a cigarette while he was in the holding area. An exhibit was presented which listed the procedures for administering the breath test. The procedures included the requirements that a subject be observed for 15 minutes prior to testing and that he not be allowed to smoke.

Elliot's breath test revealed .221 by weight of alcohol in the blood. Plaintiff's license was revoked for one year pursuant to Iowa Code section 321B.16.

Plaintiff applied for a temporary restricted license (hereinafter work permit) from the Department of Transportation (hereinafter DOT) and he challenged the validity of his driver's license revocation. In his driver's statement presented to the DOT, he claimed that his truck driving job is his only source of income.

A hearing officer who presided over plaintiff's informal hearing, upheld the license revocation and denied the work permit. The hearing officer noted that plaintiff had three previous violations and/or convictions for operating a motor vehicle under the influence of alcohol. A second hearing officer upheld the decision after a formal hearing. The second hearing officer cited Iowa Administrative Code section 820(07,C)11.3(4)(a)(5) for the proposition that no work permit shall be issued to any person who has had a previous revocation for a violation of Iowa Code section 321.-281.

Plaintiff exhausted his agency remedies and filed a petition for judicial review. The court affirmed the decision of the DOT.

## I.

Elliot contends that the legislative grant of discretion to the DOT to determine when a temporary restricted license shall issue under Iowa Code section 321B.16 is an undue delegation of legislative power to an administrative agency. Section 321B.16 provides that "[T]he department may, on application, issue a temporary restricted license to the person whose license has been revoked when the person's regular employment includes the operation of a motor vehicle or the person cannot perform the person's regular occupation without the use of a motor vehicle ..." Elliot argues that this grant of authority to the DOT does not contain adequate standards to guide the DOT's decision as to who will and who will not receive a temporary license.

Neither the plaintiff's petition nor his brief tell us what parts of the constitutions of the United States and of Iowa are thought to be transgressed. However, the basis of Elliot's argument appears to be section 1 of the Iowa Constitution which provides for a division of the power of the state into three departments—legislative, executive, and judicial—and prohibits the exercise by one department of the functions of the other departments.

■ The Iowa courts have consistently upheld broad delegations of rulemaking power to administrative agencies. The test to be applied to determine the propriety of a legislative delegation is:

[W]hether such delegation is a reasonable one permitting the administrative body only to "fill in the details" to accomplish a general purpose or policy announced by the legislature itself or whether it abdicates to the administrative body the right to legislate.

*Elk Run Telephone Co. v. General Telephone Co.*, 160 N.W.2d 311, 316 (Iowa 1968).

The legislative practice of vesting considerable discretion in administrative agencies is viewed as a necessity given the complexity and range of modern governmental functions. *Id.* at 315–16. "The intricacies of the modern problems the legislature

seeks to solve have dictated the use of general rather than detailed standards in enactments aimed at resolving those problems." *John Grubb, Inc. v. Iowa Housing Finance*, 255 N.W.2d 89, 99 (Iowa 1977). We, then, will not find an unconstitutional delegation if the purpose of the legislation is clearly set forth and the functions left to the agency are administrative details.

█ Here the legislative goals are intelligible and the policy of the Implied Consent Law is clearly articulated. "The general assembly declares that this chapter is necessary to aid the enforcement of laws prohibiting operation of a motor vehicle while under the influence of an alcoholic beverage or other drug or a combination of substances, or while having an alcohol concentration of a certain amount or more." Iowa Code § 3213.1. Furthermore, the Iowa Supreme Court has stated that the obvious purpose of the Implied Consent Law is to "reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *Severson v. Sueppel*, 260 Iowa 1169, 152 N.W.2d 281, 284 (1967). The court has also gone so far as to state that appellate courts should be slow to strike down any legislation designed to alleviate hazards of using motor vehicles on the highways. *Danner v. Hass*, 134 N.W.2d 534, 540 (Iowa 1968).

The delegation of discretion to the DOT under section 321B.16, which Elliot challenges, is quite narrow. The DOT does not determine whether there has been an OWI violation. Neither does the DOT have the discretion to determine whether a person's license should be revoked. These questions are resolved by the legislature in the Implied Consent Law and section 321.28. The only question the DOT is granted the discretion to decide is whether a person with a revoked license is entitled to a work permit during the revocation period.

█ Furthermore, the delegation of authority in 321B.16 cannot be viewed in isolation. As a state administrative agency, the DOT's actions are governed by the procedural safeguards which the Iowa Ad-

ministrative Procedure Act affords. One of these safeguards is in Iowa Code section 17A.3(1)(b) which requires that each agency shall adopt rules of practice setting forth the nature and requirements of all formal and informal procedures before it. The DOT has promulgated rules which limit its discretion in making decisions under the Implied Consent Law in Iowa Admin.Code 820 (07,C) Chapter 11. This self-limiting aspect of agency discretion must be taken into account in determining whether a delegation is a reasonable one.

Given the procedural safeguards which shroud agency action under the IAPA, and the strong public policy which the DOT is established to implement, we conclude that the delegation of discretion to the DOT regarding issuance of work permits is reasonable.

**II.**

Elliot also challenges the constitutionality of the DOT rule that the hearing officer relied on to deny Elliot's application for a work permit. At the time of Elliot's DOT hearing, Iowa Administrative Code section 820(07,C)11.3(4) provided that "A work permit shall not be issued to any person who: ... (5) has previously had a revocation for a violation of Iowa Code subsection 321.-209(2), sections *321.281*, 231.283, 321B.7, or 1982 Iowa Acts, chapter 1167." (emphasis added) Elliot argues that the enactment of this rule was not within the DOT's statutory grant of authority and thus ultra vires.

It should be noted that chapter 11 of the Iowa Administrative Code, which contained the rule in dispute, was amended by the DOT in emergency rulemaking proceedings, effective July 1, 1984. The rule Elliot challenges no longer exists. *See* I.A.C. § 820(07,C)11. Because this rule was omitted from the amended chapter, it is deemed repealed. *See* 82 C.J.S. *Statutes* § 294 (1953).

However, Iowa Code section 4.1(1) provides that "[t]he repeal of a statute, after it becomes effective does not revive a statute

previously repealed, nor affect any right which has accrued, any duty imposed, and penalty incurred, or any proceeding commenced under or by virtue of the statute repealed."

The incident from which stemmed Elliot's license revocation occurred on November 17, 1982. Elliot received a notice of license revocation effective December 16, 1982. Elliot's hearing before the DOT commenced on August 4, 1983. It follows, then, since the administrative proceedings were commenced before the repeal of rule 11.3(4), the repeal and amendment of Chapter 11 do not prevent the old rule from applying in Elliot's case.

Yet, because Elliot's challenge is a constitutional one, we must explore this issue one step further. A court as a rule will not consider the constitutionality of a statute which has been repealed, amended, or superseded. 16 C.J.S. *Constitutional Law* § 89 (1984). Ordinarily, the question of the validity of a repealed statute becomes moot. If the court would declare the statute unconstitutional, it would only be voiding a statute which has already been voided by repeal. However, a suit challenging the constitutionality of a statutory provision may not be rendered moot where a party, as a result of the failure to consider the issue would suffer collateral consequences or penalties. *Id.* This exception applies in the present case.

A ruling that the repealed rule is unconstitutional would nullify the DOT's denial of Elliot's work permit application and entitle Elliot to a new hearing. On the other hand, a ruling that the repealed rule is constitutional, will guarantee that Elliot will not wrongly bear the denial of his application. Because Elliot will suffer prejudice from the application of the repealed rule if it is unconstitutional, we will address Elliot's constitutional challenge.

This court will make anew the determinations which the district court may make under Iowa Code section 17A.19. *Temple v. Vermeer Manuf. Co.*, 285 N.W.2d 157, 159 (Iowa 1979). In reviewing agency rulemaking, we can properly consider both the record before the agency and before the district court. *Iowa-Ill. Gas & Elec. v. Iowa St. Commerce Comm.*, 334 N.W:2d 748, 751 (Iowa 1983).

"An agency rule is presumed valid and the burden is on the party challenging it to demonstrate that a 'rational agency' could not conclude the rule was within the agency's delegated authority." *Id.* at 751–52. The rule would be beyond the scope of delegation if it is at variance with the enabling act or if it amends or nullifies legislative intent. *Sommers v. Iowa Civil Rights Com.*, 337 N.W.2d 470, 475 (Iowa 1983).

Iowa Code chapter 307 established the DOT. The duties of the DOT are outlined in section 307.10. Section 307.10(5) provides that the commission shall "adopt rules in accordance with chapter 17A as it deems necessary to transact its business and for the administration and exercise of its powers and duties." Section 307.27(5) establishes that the administrator of the transportation regulation and safety division has the duty to "administer the provisions of chapters 321A, 321B, 321E, and 321F relating to motor vehicle financial responsibility, the Implied Consent Law, the movement of vehicles of excessive size and weight and the leasing and renting of vehicles."

We note that the commission is required to adopt rules necessary to perform its duties and one of its duties is to administer the provisions of the Implied Consent Law. One of the provisions of the Implied Consent Law which the DOT is to administer is 321B.16 which grants the DOT the discretion to issue temporary restricted licenses to those persons whose employment requires use of a motor vehicle. In addition to the more particular statutory basis for the rule, Iowa Code section 17A.3(1)(b) contains a legislative mandate that every agency establish rules of procedure regarding matters which may come before it.

The Iowa legislature, then, has vested the DOT with broad rulemaking authority.

The rationale for making agency policy by rule rather than by adjudication is explained in Bonfield, *Administrative Procedure Act*, 60 Iowa L.Rev. 732 (1975):

As a consequence, making policy by rule is to be preferred over making policy by ad hoc adjudication wherever possible. Rules are not normally retrospective. They give fair notice of agency intentions, permitting people to adjust their affairs accordingly. Furthermore, because formulating broad policies in adjudication eliminates or defers the participation of many individuals who are ultimately affected by the precedential value of the decision, it is not as desirable a means of making policy as is rulemaking where all interested parties get notice and a chance to provide input into the agency decision. The public also may find it easier to discern current agency policy from rules than from decisional law, which is usually unpublished and more complicated to understand. Furthermore, agencies can arguably use their resources more efficiently if they make policy decisions in a rulemaking proceeding rather than in an adjudication because a single rule will eliminate all issues of policy in many cases, leaving only issues of disputed facts, thereby avoiding the necessity for repetitive arguments on the many policy issues that are settled in the rule.

*Id.* at 927.

■ The DOT has had considerable experience in dealing with the issuance of temporary work permits due to license revocations. We cannot say that the DOT was irrational in determining that a twice-convicted OWI offender was more dangerous to the public welfare than a first-time offender. It cannot be disputed that drunk drivers pose a great danger to all those who use our state's highways. The DOT's policy combats a serious problem by removing current repeat offenders from the road, and deterring potential offenders.

The Seventh Circuit Court of Appeals, in *Doe v. Edgar*, 721 F.2d 619 (7th Cir.1983), recently upheld a similar policy established by the Illinois Secretary of State. We hereby adopt the Seventh Circuit's reasoning:

We do not regard as irrational the Secretary's policy that an individual who has been once convicted of DUI should face an extremely strong deterrent against ever again endangering his own life or the life of others by driving while intoxicated. The Secretary's policy may seem harsh to those involved, but we cannot say it would not serve the purpose of discouraging recidivist drunk driving and it certainly is within the bounds of minimum rationality. In any event, even the appearance of harshness tends to fade when compared to the laws now existent in many countries where the convicted driver's loss of freedom by immediate incarceration is more drastic than in this country as opposed to the relatively minor deprivation of not being able to drive a motor vehicle legally.

*Id.* at 623.

■ Elliot also argues that his individualized hearing became a meaningless formality given the DOT's automatic rule against issuance of a temporary permit. This argument ignores the fact that Elliot had no property interest in his driver's license after it was revoked pursuant to the Implied Consent Law. Neither does Elliot have a property interest in a work permit. The plain wording of section 321B.16 governing the issuance of work permits reveals that "the applicant has a mere unilateral expectation of issuance and not a legitimate claim of entitlement to it." *Doe*, 721 F.2d at 624. The legislature did not require that DOT issue a work permit to every person who applies and needs a motor vehicle to work. The legislature intended that the DOT use its discretion to determine when work permits should be issued in accordance with the strong public policy in Iowa against drunk driving which is explicit in our Implied Consent Law.

We conclude that the DOT could rationally conclude that rule 11.3(4) was within its delegated authority.

## III.

Elliot also argues that the DOT's decision to revoke his license was not supported by substantial evidence in the record. Elliot's argument is based on his allegation that the agency decision primarily relied on the breath test given pursuant to 321B.4. Elliot contends that the police officer did not follow the correct procedures promulgated by the Iowa Department of Public Safety's Criminalistic Laboratory in administering the breath test. Therefore, the breath test was not evidence supporting his license revocation.

An appeal from the determination of the district court is allowed under the Iowa Administrative Procedure Act. Iowa Code § 17A.20. Our review of a contested case under section 17A.20 is not de novo. "Our task is to make anew the judicial determinations specified in § 17A.19(8)." *Hoffman v. Iowa Dept. of Transp.*, 257 N.W.2d 22, 25 (Iowa 1977).

Section 17A.19(8)(f) provides that the issue on review of a contested case decision is whether substantial rights of the petitioner have been prejudiced by action which is "unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole."

The sole question, then, for our determination is whether the record before the DOT hearing office shows substantial evidence supporting the revocation of Elliot's license. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Crane v. Meier*, 332 N.W.2d 344, 346 (Iowa Ct.App. 1982). "Substantial evidence" need not be a preponderance, but a mere scintilla will not suffice. *Herring v. Iowa Law Enforcement Agency*, 341 N.W.2d 65, 66–69 (Iowa Ct.App.1983).

The police officer who stopped Elliot testified at the DOT hearing that on November 17, 1982, he observed Elliot's vehicle jump a curb as it rounded a corner. The vehicle also appeared to be speeding. The vehicle then proceeded to signal left at a green light and go straight. The officer stopped the vehicle and learned that Elliot was the driver. There was an odor of an alcoholic beverage present on Elliot's person, his eyes were red and watery, and he staggered as he walked. The officer administered some field sobriety tests to Elliot which Elliot failed to perform satisfactorily. Elliot submitted to chemical testing and failed it, registering at .221% blood alcohol level.

Iowa Code section 321B.15 allows a peace officer to take a specimen of a person's breath for the purpose of determining alcohol concentration if he uses devices or methods approved by the commissioner of public safety. Iowa Admin. Code section 680(7.2) mandates that the operator of an approved device "shall proceed in accordance with the instructions furnished by the Iowa department of public safety's criminalistic laboratory ..." There is no dispute that the intoxilyzer used on Elliot was an approved model. However, the criminalistic laboratory instructions provide that the subject to be tested must be observed at least fifteen minutes prior to testing and the subject may not smoke during this time.

Elliot testified that he smoked a cigarette during this fifteen-minute period. The police officer in charge of observing Elliot testified that Elliot did not smoke a cigarette during this critical time.

The agency's findings are conclusive when facts are in dispute or when reasonable minds may differ on the inferences to be drawn from the evidence. *Harlan v. Iowa Dept. of Job Service*, 350 N.W.2d 192, 193 (Iowa 1984). "It is the function of the agency as trier of fact to determine what part of the testimony at the hearing to accept or reject, and on review the determination of credibility should not be overturned unless the court can say that the hearing examiner erred." *Russell v. Gardner*, 256 F.Supp. 1022, 1023 (D.C.Iowa 1966). We cannot say that the hearing officer erred in considering the breath test. There was, therefore, substantial evidence to support the agency's finding.

## IV.

Elliot's final argument is that the denial of his application for a temporary restricted license constitutes cruel and unusual punishment because it deprives him of his ability to earn a livelihood. Elliot points to no cases which apply the U.S. Const. amend. VIII prohibition against cruel and unusual punishment in the context of administrative agency action and we have found none which support his proposition.

AFFIRMED.