Tom S. BRUCE, Appellant,

v.

C. Daniel RIDDLE; I. H. Gibson; Mike Fair; Melvin Pace; John L. Bauer; W. Bentley Hines; Johnnie M. Smith; W. Shannon Linning; Larry H. McCalla; Marshall L. Cason; J. Harlon Riggins; W. B. Bennett; Charles F. Styles; and Clyde E. Morgan, Individually and as Members of the Greenville County Council and Greenville County; Robert T. Ashmore; E. A. Peddycord; John Burgess; W. S. Farmer, Jr., Individually and as Representatives of Northwest Property Owners Association, Appellees.

No. 79–1213.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1979.

Decided Sept. 10, 1980.

A. Camden Lewis, Columbia, S. C. (Barnes, Austin & Lightsey, Columbia, S. C., on brief), for appellant.

Mark R. Holmes, Greenville, S. C. (J. D. Todd, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief), for appellee.

Before FIELD, Senior Circuit Judge, SPROUSE, Circuit Judge, and WILLIAMS, District Judge.[*]

SPROUSE, Circuit Judge:

This is an appeal by Tom S. Bruce, the plaintiff, in an action brought under 42 U.S.C. § 1983 from a decision of the District Court granting the motion of individual defendants for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P. The action was brought by Bruce against Greenville County, South Carolina, the defendant below, and the members of County Council, both in their official and individual capacities. The complaint demanded compensatory and punitive damages. Bruce alleges diminution in value of his real property resulting from a zoning ordinance which he claims was unconstitutionally enacted. The District Court, 464 F.Supp. 745 (D.C.S.C.), in granting the Rule 12(c) motion to dismiss the individual twelve members of the Council, held the complaint did not state a cause of action as to the individual members because they were entitled to absolute legislative immunity. The Court certified that judgment as final under Rule 54(b), F.R. Civ.P., and allowed the case to continue against the county and against the defendants in their official capacity.

Since we are reviewing a Rule 12(c) dismissal, the allegations in the complaint are construed favorably to the plaintiff. To

[*] Glen M. Williams, United States District Judge, Western District of Virginia, sitting by designation.

uphold the dismissal, we must find beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The allegations are easy to summarize.[1] The County Council of Greenville County, ignoring the recommendations of its staff, rezoned an area of land including that of the plaintiff. The zoning amendment prohibited multi–family dwellings, thus diminishing the value of plaintiff's land from $15,000 per acre to $2,000 per acre. This, according to the complaint, was done in bad faith after the individual defendants participated in private meetings with unnamed influential citizens of the area who owned nearby residential property. The purpose of the private meetings purportedly was to discuss protection of the private interests of these influential citizens who feared that public housing would be developed on the

property. There was planned for the involved land a 150–unit apartment complex sponsored by the Department of Housing and Urban Development. Some time after the private meetings, the defendants met officially in regular session and passed the controverted zoning amendment.

The issues on appeal are two: 1) did the defendants, as individuals, have absolute legislative immunity when they passed the zoning ordinances, and 2) even if they normally have absolute legislative immunity in passing such ordinances, were they outside the scope of legislative immunity due to the private meetings prior to their official vote.

We affirm, agreeing with the District Court that the Council members as individuals had absolute legislative immunity and the challenged actions were within the immunity.

Narrowly focusing on statutory interpretation, the Supreme Court has in recent years etched into Section 1983 suits rules of

---

1. The relevant parts of the complaint are:

2. Defendants . . . are members of the Greenville County Council and as such are the persons elected by the qualified electors of Greenville County for the purposes of serving on Greenville County Council and implementing the ordinances and regulations of Greenville County. . . . The Defendants are sued in their individual capacity as well as their official capacity. . . .

3. Defendant, Greenville County, is a duly constituted county within the State of South Carolina established pursuant to the laws and statutes of South Carolina and its agent Greenville County Council, is that duly constituted body which controls through ordinances the zoning regulations of Greenville County which in effect control and establish the uses of which public and private property may be put.

12. The Defendant in total disregard of the property rights of the Plaintiff voted to rezone the property of the Plaintiff from R.M. to R–15, which effect, devalued the subject property.

. . .

14. Upon information and belief prior to and during the consideration of docket number CZ–78–29, certain Defendants were contacted ex parte by influential citizens who owned residential property in the near vicinity of the subject property.

15. Upon information and belief these ex parte contracts [sic] were for the purpose of improperly and illegally influencing the Defendants to rezone the property of Plaintiff in an arbitrary and unconstitutional manner.

16. Upon information and belief certain Defendants and certain citizens with residential property in the vicinity, joined together in non–public meetings with the sole purpose of rezoning said property for the protection of certain citizens which owned residential property in the vicinity. Such plans and rezoning were not for the benefit of the public nor was such rezoning and plans for any other purpose other than for the protection of the above-named few.

22. Upon information and belief, the Defendants, . . . individually and in violation of the laws of the State of South Carolina, entered into ex parte communications with certain citizens [of] Greenville County for the purpose of pleasing and protecting such citizens to the detriment of other citizens to include the Plaintiff.

23. The Defendants, . . . individually and through their collective efforts with certain citizens of Greenville County have disregarded the recommendations of its staff and have, without the necessary justification, passed a change to Ordinance Number Seven ( # 7).

. . .

27. Defendant's practice of rezoning the plaintiff's property in order to favor and grant special consideration to a select group of citizens of Greenville County amounts to a devious discrimination, unequal treatment in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and of Article I, Section 5 of the Constitution of the State of South Carolina.

governmental immunity which vary considerably. The immunity of state political entities and their executives has been derived from the Eleventh Amendment of the United States Constitution and common law sovereign immunity. The exclusion of individuals acting in judicial and legislative capacities has been based on the common law as it existed when Congress passed the predecessor of Section 1983–Sections 1 and 2 of the Civil Rights Act of 1871.

Justice Brennan summarized the modern development of governmental immunity in *Owen v. City of Independence*, 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980).

> However, notwithstanding § 1983's expansive language and the absence of any express incorporation of common–law immunities, we have, on several occasions, found that a tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that "Congress would have specifically so provided had it wished to abolish the doctrine." *Pierson v. Ray*, 386 U.S. 547, 555 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288] (1967). Thus in *Tenney v. Brandhove*, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951), after tracing the development of an absolute legislative privilege from its source in 16th–century England to its inclusion in the Federal and State Constitutions, we concluded that Congress "would [not] impinge on a tradition so well grounded in history and reason by covert inclusion in the general language" of § 1983. *Id.*, at 376 [71 S.Ct., at 788].
>
> Subsequent cases have required that we consider the personal liability of various other types of government officials. Noting that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," *Pierson v. Ray, supra* [386 U.S.] at 553–554 [87 S.Ct., at 1217], held that the absolute immunity traditionally accorded judges was preserved under § 1983. In that same case, local police officers were held to enjoy a "good faith and probable cause" defense

to § 1983 suits similar to that which existed in false arrest actions at common law. *Id.*, at 555–557 [87 S.Ct., at 1218–1219]. Several more recent decisions have found immunities of varying scope appropriate for different state and local officials sued under § 1983. See *Procunier v. Navarette*, 434 U.S. 555 [98 S.Ct. 855, 55 L.Ed.2d 24] (1978) (qualified immunity for prison officials and officers); *Imbler v. Pachtman*, 424 U.S. 409 [96 S.Ct. 984, 47 L.Ed.2d 128] (1976) (absolute immunity for prosecutors in initiating and presenting the State's case); *O'Connor v. Donaldson*, 422 U.S. 563 [95 S.Ct. 2486, 45 L.Ed.2d 396] (1975) (qualified immunity for superintendent of state hospital); *Wood v. Strickland*, 420 U.S. 308 [95 S.Ct. 992, 43 L.Ed.2d 214] (1975) (qualified immunity for local school board members); *Scheuer v. Rhodes*, 416 U.S. 232 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974) (qualified "good–faith" immunity for state Governor and other executive officers for discretionary acts performed in the course of official conduct).

> In each of these cases, our finding of § 1983 immunity "was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler v. Pachtman, supra* [424 U.S.,] at 421 [96 S.Ct., at 990]. Where the immunity claimed by the defendant was well–established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity.

The Court, in *Tenney v. Brandhove, supra*, considered a § 1983 action against a chairman of a state legislative committee and others for action taken against the plaintiff in committee meetings. The Court held state legislators to have absolute immunity from § 1983 actions for any incidents in which they were involved in their legislative capacity. The Court said:

> The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has

taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries. : ..

Freedom of speech and action in the legislature was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation. It was deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the Constitution. . . .

The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence."

. . . .

... We cannot believe that Congress—itself a staunch advocate of legislative freedom—would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us.

*Tenney v. Brandhove*, 341 U.S. at 372, 373, 376, 71 S.Ct. at 786, 788.

*Tenney* grounded the freedom of state legislators from § 1983 suits on ancient early American and ancient English common law. Neither of these branches of our common law heritage, however, contain the answer of whether this absolute immunity extends to local legislators. There is little, if any, early American precedent indicating that such early immunity extended to individuals exercising legislative functions in political subdivisions of the lower echelon. The early American cases sometimes cited as supporting this doctrine were not clearly grounded on absolute legislative immunity, but were concerned for the most part with types of qualified immunity, distinctions in governmental functions, and exceptions to sovereign immunity.[2]

---

2. The cases generally contain language requiring that the legislative actions have been done in good faith or without corruption. One of the earliest American cases illustrates this point. *Baker v. State*, 27 Ind. 485 (1867) was a nuisance action against the members of a city council. The rule followed was that city council members are not subject to individual liability unless they acted corruptly. Presumably, malicious legislative action or actions taken with a specific intent to inflict injury would be subject to liability. *See also Village of Hicksville v. Blakeslee, infra;* Annot. 22 A.L.R. 125 (1923).

According to W. Prosser, Handbook on Law of Torts § 132 n. 80 (4th ed. 1971) the same absolute immunity afforded judicial officers for acts within the courts' jurisdiction extends to inferior legislative· bodies such as municipal councils, at least so long as they do not clearly exceed the discretion vested them in law. Prosser cites: *Village of Hicksville v. Blakeslee*, 103 Ohio St., 508, 134 N.E. 445 (1921); *Pawlowski v. Jenks*, 115 Mich. 275, 73 N.W. 238 (1897) (city council member cannot be held liable for refusing to approve a liquor bond); *McHenry v. Sneer*, 56 Iowa 649, 10 N.W. 234 (1881) (nothing members of city council did was unlawful); *Jones v. Loving*, 55 Miss. 109 (1877) (the earliest tort case found clearly affording absolute legislative immunity). *Jones* cites *County Commissioners of Anne Arundel*

*County v. Duckett*, 20 Md. 468 (1863) and *Marks, infra.*

*Blakeslee* cites *Jones, Russell v. Tate*, 52 Ark. 541, 13 S.W. 130 (1890), 7 L.R.A. 180, 20 Am. St.Rep. 193, and *Borough of Freeport v. Marks*, 59 Pa. 253 (1868). *Tate*, in dicta, recognized the immunity rule of *Jones* and *Marks*, but held city councilmen can be required to reimburse the city treasury for monies appropriated contrary to state law. *Marks* involved a claim against a borough on a bond issued by the town council. The court held that the motives of the members of council could not be inquired into for the purpose of nullifying an ordinance which was within the power of the city council to pass. *Marks* relies on no earlier authority.

*Jenks* cites *Amperse v. Winslow*, 75 Mich. 234, 42 N.W. 823 (1889). This case involved judicial immunity in refusing to grant a liquor license but distinguishes a ministerial officer from a judicial officer who must exercise discretion.

In *Duckett, supra*, an action was brought against county commissioners in their official capacity to recover the value of a horse killed on an out-of-repair country road. The court held that certain Maryland statutes placing a duty on the county to maintain its public roads created liability. This case does not hold individual legislators are entitled to complete immunity from monetary liability.

Justice Frankfurter, in finding absolute immunity for the California legislator in *Tenney*, referred to legislative immunity as having "taproots" in parliamentary struggles of the Sixteenth and Seventeenth Centuries. *Id.*, at 372, 71 S.Ct. at 786. The literature in this area dealing with only parliamentary immunity however, provides no guidance on the question of local legislative immunity. *See* 11 Encyclopedia of the Laws of England, *Privilege* 633 (2nd ed. 1908). Article 9 of the Bill of Rights of 1688, 1 W. & M., Session 2, c. 2, confined its immunity distinctions to members of Parliament. Likewise, the Parliamentary Privilege Act of 1770, 10 Geo. 3, c. 50, abrogated complete personal immunity for members of Parliament but did not limit the immunity for members of Parliament in their official capacity and did not discuss immunity for any other legislative or quasilegislative bodies. *See, In Re Parliamentary Privilege Act*, 1770, 1958 A.C. 331; *Stockdale v. Hansard*, 9 AD & E 1, 113, 114; 112 Eng.Rep. 1112, 1155–56 (QB 1839).

One can surmise that the paucity of early legal actions against local legislators for legislative acts was due to relatively few early local legislative bodies and undeveloped jurisprudence. At any rate, the question is whether the immunity for state legislators in *Tenney* is confined to members of the legislature of a state or is generically extended to members of a legislative body of any political subdivision. *Tenney* involved a member of the California legislature but its language and the policies it announced for immunizing legislators could logically apply with equal force to local legislators. Justice Frankfurter wrote in a generic sense. He wrote of English parliamentary immunity, American federal legislative immunity, and the adoption of both concepts as applying to state legislators by most state constitutions.

The Supreme Court's treatment of judicial immunity is instructive in determining how far absolute legislative immunity should be extended. In *Pierson v. Ray, supra,* the Court concluded that individuals acting in a judicial capacity have absolute immunity from liability in a § 1983 action. This result was reached through the same reasoning applied in *Tenney*. In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court recognized absolute judicial immunity for an individual acting as an administrative law judge within the United States Department of Agriculture. The plaintiff there argued that immunity should be denied because the administrative judge was employed by and acted within an executive department of government. The Court rejected the argument, saying: "Judges have absolute immunity not because of their particular location within the government, but because of the special nature of their responsibilities." *Butz, supra* at 511, 98 S.Ct. at 2913. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court held a county prosecutor of the State of California to be entitled to absolute immunity from § 1983 actions when he functioned within the judicial sphere. It is clear from the discussion that all prosecutors from county to federal level are entitled to this "quasi-judicial" immunity.

The Supreme Court, in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), decided an issue similar to the one in the instant case. The Court there held legislative members of a regional political subdivision had absolute legislative immunity in adopting a land use ordinance and general plan. *Lake Country Estates* would seem to dispose of the first issue of this case except the Court expressly de-

In *Coffin v. Coffin,* 4 Mass. 1 (1808), cited in *Tenney*, the plaintiff commenced a defamation action against a member of the Massachusetts House of Representatives, alleging the defendant accused him of having robbed a bank subsequent to his acquittal of such charge. The

defendant claimed his remarks were privileged because they were made during the course of deliberations in the House. The no-liability ruling was based on the speech and debate clause of the Massachusetts Constitution.

clined to indicate whether the absolute immunity for regional legislators would be extended to individuals performing legislative functions at the purely local level.[3]

The Court, in *Lake Country Estates*, considered the action of officials of the Tahoe Regional Planning Agency in adopting a land use ordinance and engaging in other conduct that affected the value of plaintiff's property. Six of the ten members were appointed by county and city governments in the area, one each by the Governors of California and Nevada, respectively, and two were members by virtue of their office in state natural resources agencies. *Id.* at 407, 99 S.Ct. at 1180. The Court first held that TRPA did not have Eleventh Amendment immunity as it was not functioning as a state for these purposes. The Court could not determine from the record how much of the individual defendants' activities were legislative in nature but held "that to the extent the evidence discloses that these individuals were acting in a capacity comparable to that of members of a state legislature, they are entitled to absolute immunity from federal damage liability." *Id.* at 406, 99 S.Ct. at 1180.

Justice Marshall's dissent bears significantly on the issue in the instant case:

> Equally troubling is the majority's refusal to confront the logical implications of its analysis. To be sure, the Court expressly reserves the question whether individuals performing legislative functions at the local level should be afforded absolute immunity from federal damages claims. Ante, at 404 n. 26 [99 S.Ct. at 1179 n. 26]. But the majority's reasoning in this case leaves little room to argue that municipal legislators stand on a different footing than their regional counterparts. Surely the Court's supposition that the "cost and inconvenience and distractions of a trial" will impede officials in the "'uninhibited discharge of their legislative duty,'" ante, at 405 [99 S.Ct. at 1179], quoting *Tenney v. Brandhove*, supra, at 377 [71 S.Ct. at 788], applies with equal force whether the officials occupy local or regional positions. Moreover, the Court implies that the test for conferring unqualified immunity is purely functional. Ante, at 405, n. 30 [99 S.Ct. at 1179–1180, n. 29]. If the sole inquiry under that test is the nature of the officials' responsibilities, see ibid., not the common law and constitutional underpinnings of the privilege itself or the wisdom of extending it to nonelected officials, then presumably any appointed member of a municipal government can claim absolute protection for his legislative acts.

*Id.*, at 407–08, 99 S.Ct. at 1180.

Early common law gives no specific foundation for legislative immunity to regional legislators because regional compacts are modern, peculiarly American institutions. Yet Justice Stevens referred to English parliamentary immunity as precedent for immunity for the twentieth century regional legislators of TRPA. The linking rationale is that they are functionally equivalent. Justice Stevens said:

---

**3.** "In support of these arguments, petitioners invoke decisions of the courts of appeals denying absolute immunity to subordinate officials such as county supervisors and members of a park district board. *Williams v. Anderson*, 562 F.2d 1081, 1101 (CA8 1977) (school board members); *Jones v. Diamond*, 519 F.2d 1090, 1101 (CA5 1975) (county supervisors); *Curry v. Gillette*, 461 F.2d 1003, 1005 (CA6), cert. denied sub nom. *Marsh v. Curry*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972) (alderman); *Progress Development Corp. v. Mitchell*, 286 F.2d 222, 231 (CA7 1961) (members of park district board and village board of trustees); *Nelson v. Knox*, 256 F.2d 312, 314–315 (CA6 1958) (city commissioners); *Cobb v. City of Malden*, 202 F.2d 701, 706–707 (CA1 1953) (McGruder C. J., concurring) (city councilmen). Respondents, on the other hand, contend that in most, if not all, of the cases in which absolute immunity has been denied, the individuals were not in fact acting in a legislative capacity. We need not resolve this dispute. Whether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity from federal damages claims is a question not presented in this case." *Lake Country Estates, supra*, 440 U.S. at 404 n. 26, 99 S.Ct. at 1179 n. 26.

The immunity of legislators from civil suit for what they do or say as legislators has its roots in the parliamentary struggles of 16th and 17th Century England; such' immunity was consistently recognized in the common law and was taken as a matter of course by our Nation's founders.

*Id.*, at 403, 99 S.Ct. at 1178.

More significant is Justice Stevens' reference to *Butz* in footnote 30. Holding that regional legislators could not be held liable under a § 1983 claim when acting in a legislative capacity, Justice Stevens explained:

This holding is supported by the analysis in *Butz v. Economou*, 438 U.S. 478 [98 S.Ct. 2894, 57 L.Ed.2d 895], which recognized absolute immunity for individuals performing judicial and prosecutorial functions within the Department of Agriculture. In that case, we rejected the argument that absolute immunity should be denied because the individuals were employed in the Executive Branch, reasoning that "[j]udges have absolute immunity not because of their particular location within the Government, but because of the special nature of their responsibilities." *Id.*, at 511. This reasoning also applies to legislators.

*Id.*, at 406 n. 30, 99 S.Ct. at 1179 n. 30.

Due to the Court's pointed reservation of a decision on this issue in *Lake Country Estates*, we have at some lengths drawn on the analogies from other cases for our conclusion that *Lake Country Estates'* extension of absolute legislative immunity is applicable to local legislators. In *Owen v. City of Independence, supra*, four members of the Court recognized this as a *fait accompli*. In *Owen*, Paul A. Roberts was a city councilman sued in a § 1983 action in his official capacity only. Justice Powell, in a dissent joined by The Chief Justice, Justices Stewart and Rehnquist, stated:

Roberts himself enjoyed absolute immunity from § 1983 suits for acts taken in his legislative capacity. *Lake Country Estates v. Tahoe Planning Agency*, 440

U.S. 391, 402–406 [99 S.Ct. 1171, 1178–1180, 59 L.Ed.2d 401] (1979). Owen did sue him in state court for libel and slander, and reached an out–of–court settlement.

445 U.S. at 664 n. 6, 100 S.Ct. at 1422 n. 6.

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), both recognized the functional approach for determining immunity—emphasizing that officials in the judicial and legislative branches have personal absolute immunity while individuals acting as executives are entitled to only qualified immunity—the scope depending on the nature of their activities.

■ We think, therefore, that if legislators of any political subdivision of a state function in a legislative capacity, they are absolutely immune from being sued under the provisions of § 1983.

Bruce's second contention is that the defendants acted outside of their legislative immunity by meeting privately with interested individuals who tended to influence their vote on the zoning ordinances. Viewing the complaint in the light most favorable to Bruce, the complaint alleges that the defendant members of the Council met with a number of their constituents who had selfish interests in the passage of the zoning ordinance and were influenced in their vote as a result of the meetings. The proof of these allegations at trial would not remove the defendants from the scope of their legislative activities. There may well be circumstances involved in private meetings by legislators that would remove them from the umbrella of legislative immunity. Illegal acts such as bribery are obviously not in aid of legislative activity and legislators can claim no immunity for illegal acts. Plaintiff, however, alleges no such illegal conduct.

The Greenville County Council members met with constituents who, concededly, for their own interest, were interested in the

passage of the ordinance. The Council members might well have met with constituents who were conversely opposed to the ordinance. Meeting with "interest" groups, professional or amateur, regardless of their motivation, is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider. The possibility that legislators may be "politically" motivated to attend such meetings cannot take away from the legislative character of the process. Justice Frankfurter said as much in his now famous prose in *Tenney*:

> Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of the judgment against them based upon a jury's speculation as to motives.

*Tenney v. Brandhove*, 341 U.S. at 377, 71 S.Ct. at 788.

This language was repeated favorably in *Lake Country Estates*. Justice Frankfurter, in *Tenney*, also quoted the language from *Coffin v. Coffin*, 4 Mass. 1, 27 (1808):

> I will not confine it to the delivering of an opinion, uttering a speech, . . . but will extend it to the giving of a vote, . . . and to every other act resulting from the nature, and in the execution, of the office. . . .

*Tenney v. Brandhove*, 341 U.S. at 374, 71 S.Ct. at 787.

■ Having held that the defendant county council members are absolutely immune when performing legislative acts, we also hold that they were acting within the scope of their legislative activity when they voted on the controverted ordinances despite their previous meetings with partisans to one side of the zoning controversy.

The opinion of the District Court is, therefore, affirmed.

*AFFIRMED*.