William J. MIRSHAK, Plaintiff,

v.

Jeremiah JOYCE, Vincent Gavin, William Dart, Julia B. Girsch, Thomas J. Fox and Theresa Fox, Defendants.

No. 82 C 6846.

United States District Court, N.D. Illinois, E.D.

Jan. 14, 1987.

William Kurnik, Kurnik and Cipolla, Arlington Heights, Ill., Ira Gould, Norman B. Berger, Lori A. Schaffel, Holleb & Coff, Ltd., Chicago, Ill., for plaintiff.

Thomas G. Morrissey, William J. Harte, Mary E. Rosen, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff William J. Mirshak ("plaintiff") has filed a four-count amended complaint against the defendants Jeremiah Joyce ("Joyce"), Vincent Gavin ("Gavin"), William Dart ("Dart"), Julia B. Girsch ("Girsch"), Thomas J. Fox and Theresa Fox ("Foxes"). In Count I of the amended complaint, the plaintiff alleges that Joyce, acting under the color of state law, deprived the plaintiff of his fourteenth amendment rights in violation of 42 U.S.C. § 1983. In Count II, the plaintiff alleges another cause of action based on Section 1983 against Gavin. In Count III, the plaintiff alleges that all of the defendants conspired to deprive the plaintiff of his constitutional rights in violation of Section 1983. Count IV is a pendent state-claim, and in it the plaintiff alleges that Joyce made a number of defamatory statements concerning the plaintiff.

In this opinion, the court addresses motions that are pending. Before the court addresses those motions, a brief summary of the facts as alleged in the plaintiff's amended complaint is in order.

At the times relevant to the amended complaint, the plaintiff was engaged in the retail sales of alcohol as a restaurant and lounge owner in the community of Beverly in the 19th Ward of Chicago, Illinois. Specifically, the plaintiff owned and operated two lounges—the Marquis Restaurant ("The Marquis"), which opened in 1972, and The Keyes, which opened in 1978.[1] In February of 1977, when the plaintiff owned and operated only The Marquis, he began to negotiate for the purchase of the property where The Keyes now stands. In April of 1977, members of the Building Commission and members of the Liquor License Control Commission ("Liquor Commission") advised the plaintiff that the property had the requisite zoning for a restaurant, lounge and nightclub and was otherwise appropriate for such an establishment. Based on that advice, the plaintiff purchased the property.

In 1977, Joyce was the alderman of the 19th Ward.[2] The Foxes then owned and operated a restaurant within one block of The Marquis and The Keyes. On June 30, 1977, Thomas J. Fox told the plaintiff that Fox was against the opening of The Keyes, and that if Fox told Joyce to stop the plaintiff from opening The Keyes, the plaintiff would never get the place opened. Fox then told Joyce of his opposition to the opening of The Keyes.

In 1977, Gavin, a sergeant in the Chicago Police Department, was assigned to the Liquor Commission. Gavin supervised the issuance, denial, suspension and revocation of liquor licenses in and for the City of Chicago. On July 1, 1977, Gavin caused a "stop" order to be placed on the plaintiff's name and the location of The Keyes in the files of the Liquor Commission. The stop order prevented the issuance of a liquor license for The Keyes until Gavin was willing to remove it. Gavin did this at the insistence of Joyce for reasons inconsistent with the Municipal Code of the City of Chicago governing the issuance of liquor licenses.

In February of 1978, when the remodeling of The Keyes was substantially completed, the plaintiff applied for a liquor license for The Keyes but was rejected due to the stop order. In March, 1978, Gavin refused to remove the stop order on The Keyes and threatened the plaintiff that he would close down The Keyes. On July 19, 1978, the plaintiff again applied for a liquor license and was rejected. When the plaintiff met with Gavin, Gavin told the plaintiff that Joyce and the Beverly Area Planning Association ("BAPA") did not want the plaintiff to open The Keyes.

On July 20, 1978, Joyce introduced an ordinance with the City Council to downzone an area surrounding The Keyes in order to keep the plaintiff from opening The Keyes.

On August 21, 1978, Joyce met with the plaintiff and told him that Joyce knew of the stop order. Joyce further told the plaintiff that Joyce would not allow him to own two bars in the 19th Ward and did not want him to open The Keyes. After the plaintiff left Joyce's office, Joyce met with Theresa Fox who urged Joyce to prevent The Keyes from opening.

On or about September 15, 1978, the plaintiff complained to Dart about the stop order. At that time, Dart was an attorney employed as an assistant corporation counsel of the City of Chicago. After subsequently telephoning Joyce and meeting with Gavin, Dart told the plaintiff that the plaintiff would have to get Joyce's approval if he wanted a liquor license for The Keyes.

---

1. The other plaintiff in this action, The Keyboard, Ltd., is an Illinois corporation which owns and operates The Keyes and of which William J. Mirshak was the sole shareholder and an officer at the times relevant to the amended complaint.

2. In 1979, Joyce became the state senator for an area which included the 19th Ward.

Dart then arranged a meeting between the plaintiff and Joyce. At the meeting, Joyce told the plaintiff that Joyce would allow him to open The Keyes if the plaintiff agreed to operate The Keyes without a late-night license [3] and close The Marquis, sell it, or lease it as a non-liquor serving establishment to the satisfaction of BAPA. Joyce threatened to send the police into The Marquis if the plaintiff did not close it, and directed the plaintiff to draft a letter regarding the agreement Joyce and the plaintiff had reached and deliver it to BAPA.

Consequently, on or about September 18, 1978, the plaintiff went to meet with Girsch, a BAPA staff person. Together they drafted a letter which reflected that The Marquis would close and not be sold or leased without the approval of BAPA. Girsch read the letter to Joyce over the telephone.

Joyce subsequently informed Dart of his agreement with the plaintiff and authorized Dart to issue the license. The plaintiff then closed The Marquis in October, 1978. Shortly thereafter, however, an officer from the Chicago Police Department Office of Professional Review instructed the plaintiff to reopen The Marquis, which the plaintiff did. As a result of the agreement reached with Joyce, the plaintiff sold The Marquis as a non-liquor establishment in January 1980. But for this agreement made at the insistence of Joyce, the plaintiff would have either sold The Marquis as a liquor establishment or not sold it at all. Also because of this agreement, the plaintiff refrained from applying for a late-night license for The Keyes until November of 1979.[4]

In the amended complaint, the plaintiff also alleges that, beginning in 1977 and continuing through 1985, Chicago police repeatedly subjected The Marquis and The Keyes to unnecessary raids during business hours. This was done at the direction of Joyce and Gavin initially to obtain the plaintiff's agreement and later to punish the plaintiff for continuing to operate The Marquis. Moreover, Joyce appeared at various meetings and made certain defamatory accusations regarding the plaintiff.

## I

### Defendants' Motions for Summary Judgment

The defendants Joyce, the Foxes and Girsch separately move the court to grant them summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Summary judgment is appropriate only where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The court must view the evidence, and the reasonable inferences to be drawn from the evidence, in the light most favorable to the party opposing summary judgment. *Id.* Where the moving party fails to meet its strict burden of proof, the court cannot grant the motion for summary judgment. *Id.* Finally, according to the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the moving party may discharge his burden by showing that there is an absence of evidence to support the non-moving party's case.

In light of the foregoing principles, the court addresses each of the defendants' motions in turn.

### A. Joyce

Joyce moves this court for summary judgment on a number of different grounds. The court will treat each of his arguments separately.

---

3. An establishment could remain open until 4:00 a.m. if it had a late-night license. Otherwise, it had to close at 2:00 a.m.

4. The plaintiff eventually received a late-night license in January, 1980.

### 1. Legislative Immunity

In his motion for summary judgment, Joyce argues that, as the alderman of the 19th Ward from April, 1975 to February, 1979, he is entitled to both absolute and qualified immunity from damages liability under Section 1983. The plaintiff objects to this argument and claims that Joyce is not immune from liability for the acts alleged in the amended complaint.

The Speech and Debate Clause of the United States Constitution provides absolute immunity for members of Congress for acts which fall within the sphere of legislative activity. *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975). The clause insures "that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions." *Powell v. McCormack,* 395 U.S. 486, 505, 89 S.Ct. 1944, 1955, 23 L.Ed.2d 491 (1969). By its own terms, the speech and debate clause applies only to federal legislators. *See* U.S. Const. art. I, § 6. But the Supreme Court has found state and regional legislators to be immune from Section 1983 liability for acts taken within the sphere of legitimate legislative action. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979) (regional legislators); *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (state legislators). In *Reed v. Village of Shorewood,* 704 F.2d 943, 952–53 (7th Cir.1983), the Seventh Circuit took the inevitable step of extending Section 1983 immunity to municipal legislators as well.

■ Legislators, judges and certain executive officials have absolute immunity, or complete protection from suit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The norm for most executive officials is a more limited, or qualified, immunity. *Id.* The doctrine of qualified immunity shields the government official from liability for

civil damages insofar as the official's conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. Although a legislator may have qualified immunity for acts of an executive nature, *see Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 135 (5th Cir.1986); 1 J. Cook & J. Sobieski, Civil Rights Actions ¶ 2.06[B], at 2–78.21 (1986), a legislator has no protection for acts that are "purely private" in nature. *See Rateree v. Rockett,* 630 F.Supp. 763, 770 (N.D.Ill.1986) (Shadur, J.). Whether the immunity claimed be absolute or qualified, the burden of justifying or proving the immunity rests with the party asserting the claim. *See Harlow,* 457 U.S. at 812, 102 S.Ct. at 2735 (absolute immunity); *Alexander v. Alexander,* 706 F.2d 751, 754 (6th Cir.1983) (qualified immunity).

■ As alderman for the 19th Ward from 1975 to February, 1979, and as state senator from February, 1979 on, Joyce was a legislator during the period he committed the acts alleged in the amended complaint. For one of the alleged acts, the doctrine of absolute immunity protects Joyce from liability under Section 1983 because the act was clearly legislative in nature. This protected act was Joyce's introducing an ordinance with the City Counsel to downzone a section surrounding The Keyes.[5]

■ With respect to the other acts Joyce is alleged to have committed, Joyce must establish that they fall within the scope of the legislative immunity. The Supreme Court equated the legislative immunity to which state legislators are entitled under Section 1983 to that accorded Congressmen under the Constitution. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 733, 100 S.Ct. 1967, 1975, 64 L.Ed.2d 641 (1980). For purposes of this case, the court holds that the immunity for municipal legislators can also be equated with that for Congressmen.

---

**5.** This protected act is alleged in Paragraph 23 of the First Amended Complaint.

In *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972), the Supreme Court in defining the scope of congressional immunity held that legislative acts are not all-encompassing. The heart of the speech and debate clause is speech or debate in either House of Congress. *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). The Court in *Gravel* went on to state the following:

> Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.... The courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations."

*Id.* (citing *United States v. Doe*, 455 F.2d 753, 760 (1st Cir.1972)).

In *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), the Supreme Court established the distinction between legislative and "political" activities. Legislative acts are protected and are defined by the Court in *Gravel*. But Congressmen also engage in a number of legitimate activities other than the purely legislative activities. *United States v. Brewster*, 408 U.S. 501, 512, 92 S.Ct. 2531, 2537, 33 L.Ed.2d 507 (1972). These activities include a wide range of legitimate "errands" performed for constituents, the making of appointments with government agencies, assistance in securing government contracts, as well as communicating directly with the public through such media as constituent news letters, press releases, speeches delivered outside of Congress, and book publishings. *Id.* These activities

are political rather than legislative, and are not afforded the protections of the speech and debate clause. *Id.*

■ Applying *Gravel* and *Brewster* to this case, the court finds that Joyce has failed to meet his burden of showing that those other alleged acts should be protected as legislative acts. In his deposition, Joyce admits he had no authority over the actions of the Liquor Commission. Joyce Deposition at 56. Although communicating complaints to members of the Liquor Commission may be admirable, it is not essential to an alderman's legislative deliberations in the City Council, particularly where the City Council has no control over the Liquor Commission.[6] In other words, Joyce's communications with Gavin and Dart were political as defined in *Brewster* and hence are not protected from Section 1983 liability. The same holds true for the agreement Joyce reached with the plaintiff, the instructions to Chicago police to harass customers at the plaintiff's liquor establishments, and any other alleged activity which this court has not explicitly held to be protected as legislative in this opinion.

■ In support of his argument that his appearance at various local meetings is protected, Joyce cites *Bruce v. Riddle*, 631 F.2d 272, 279–80 (4th Cir.1980) for the proposition that a legislator's meeting with various interest groups is part and parcel of the legislative process. The court finds this holding of *Bruce* to be inconsistent with the express language of *Brewster*. In *Brewster*, the Supreme Court expressly held that "... 'news letters' to constituents, news releases, and *speeches delivered outside the Congress*" are political and hence unprotected. *See Brewster*, 408 U.S. at 512, 92 S.Ct. at 2537 (emphasis added). It would be impractical for this court to create a distinction between the legislator's talking to constituents and their talking to him because invariably elements of both

---

6. The Seventh Circuit in *Thillens, Inc. v. Community Currency Exchange*, 729 F.2d 1128, 1130 (7th Cir.1984), *cert. denied*, 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 342 (1984), was confronted with facts analogous to this case, but expressly reserved ruling on the issue of whether a legislator should be immunized for the legislator's dealings with an administrative agency.

**366**

exist in every meeting. The court considers the better rule to be limiting protected matters to those that occur in the halls of the legislature or are directly related to work therein, such as voting, preparing committee reports or conducting committee hearings. *See generally*, L. Tribe, American Constitutional Law § 5–18, at 293 (1978). Alternatively, even if this court were to adopt *Bruce*, the court would still find that since the substance of the meetings Joyce had with his constituents concerned something he had no control over, i.e. liquor licenses, the meetings did not relate to any deliberations Joyce was having in the City Council. Hence, even under *Bruce* Joyce's claim for protection fails.

Finally, Joyce has failed to establish or even argue that the actions he took were of an executive or administrative nature and therefore entitled to qualified immunity. Consequently and in summary, the court holds that Joyce is immune from liability under Section 1983 only for his introducing an ordinance in the City Council.

### 2. Section 1983 Claims

█ Joyce next argues that the evidence fails to establish a Section 1983 violation for which he can be held liable. To establish personal liability in a Section 1983 action, the plaintiff must show that Joyce, while acting under the color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985).

█ Joyce argues that the evidence does not support the plaintiff's equal protection claim. Joyce attacks the equal protection claim on the grounds that the plaintiff has failed to establish the requisite nexus between Joyce's acts and the police harassment. Joyce maintains no competent evidence exists to support the allegation that Joyce directed the police to harass the plaintiff and his customers. The court agrees. Since Joyce has discharged his burden on this motion with regard to the equal protection claim by showing the absence of a genuine issue of material fact, *see Celotex*, 106 S.Ct. at 2554, and since the plaintiff has failed to introduce any evi-

dence in response to this motion, the court grants Joyce summary judgment on the equal protection claim.

With regard to the due process claim, Joyce argues that the plaintiff could not have been deprived of due process when his liquor-license application for The Keyes was delayed because the plaintiff's interest in initially obtaining a liquor license was not a protectable property interest within the meaning of the fourteenth amendment. In support of this position, Joyce cites a string of Illinois cases which state that under Illinois law a liquor license is a "privilege," not a "property right." *See* Memorandum in Support of Joyce's Motion for Summary Judgment at 1. The Seventh Circuit, however, in *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983) stated that such labels are not conclusive for purposes of fourteenth amendment analysis. In *Reed*, the court held that a liquor licensee had a property interest when his license was up for renewal as well as in instances of revocation. *See Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir.1983). But the court in *Reed* did not address the question of whether an applicant for a liquor license has a property interest for purposes of the fourteenth amendment. After careful consideration of *Reed* and local law, the court concludes that an applicant does have such a property interest.

Prior to *Reed*, Illinois courts had uniformly held that an applicant for a liquor license does not have a constitutionally-protected right to sell liquor. *See, e.g., Jacobsen v. State of Illinois Liquor Control*, 97 Ill.App.3d 700, 53 Ill.Dec. 147, 149, 423 N.E.2d 531, 533 (2d Dist.1981). The first issue this court must resolve is whether *Reed* expanded the notion of "property" to include an applicant's interest in initially obtaining a liquor license. The court concludes it did not. In *Reed*, the court concluded that the express language of Illinois Revised Statute ch. 43, ¶¶ 149, 153 (1981) provides that a licensee has full due process rights in cases of license revocation. *See Reed*, 704 F.2d at 948. But unless the

court found due process to be applicable to cases of renewal, the liquor control commission could avoid the due process protections for revocation simply by summarily denying an application for renewal after the license expired. *Id.* at 949. Since the criteria for renewal are undemanding under Illinois Revised Statute ch. 43, ¶ 119 (1982), the *Reed* court indicated that the Illinois legislature expected most licenses to be renewed as a matter of course. *Id.* at 948–49. Citing *City of Wyoming v. Liquor Control Comm'n of Illinois,* 48 Ill. App.3d 404, 409, 6 Ill.Dec. 258, 262, 362 N.E.2d 1080, 1084 (3d Dist.1977), the *Reed* court interpreted the term "revocation" in ¶ 149 to include the refusal to issue a renewal license. *Id.* at 949.

The logic of *Reed* does not extend to the interest of an applicant not already in possession of a particular liquor license. The *Reed* court was simply trying to insure that the procedural protection for revocation could not be circumvented by waiting until the license expired. *See id.* Consequently, the court concludes that *Reed* is inapplicable to this case.

The court is thus confronted with a question of first impression, i.e., whether an applicant for a liquor license in Chicago, Illinois has a property right for purposes of the fourteenth amendment. The guidelines for determining whether a property interest exists were set forth by the Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), where the Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source

such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Thus, the sufficiency of the plaintiff's claim of entitlement must be examined in light of state and local law to determine if there are rules or mutually explicit understandings in support of the plaintiff's assertion that he had a property right as an applicant for a liquor license. *See Rehbock v. Dixon,* 458 F.Supp. 1056, 1061 (N.D.Ill. 1978) (Leighton, J.).

Based on these well-settled standards, the court concludes that the pertinent provisions of the Municipal Code of Chicago create a property right for the plaintiff in his application for liquor license for The Kéyes.[7] Chapter 147 of the Municipal Code of Chicago ("Code"), entitled "Liquor Dealers," provides that the final determination of whether an applicant receives a liquor license is left to the Mayor of the City of Chicago. Municipal Code of Chicago ch. 147, § 6 (1984). Chapter 147 does not state specifically whether the issuance of a liquor license is a matter purely within the mayor's discretion or not, but it does refer to the general requirements of the Code relating to applications for licenses. *See id.* at § 3. The general licensing provisions of the Code are in Chapter 101. In the provision of Chapter 101 regarding investigations by the mayor of certain license applications, the Code states the following:

> Upon receiving notification from the Director of Revenue that the applicant . . . has complied with all of the necessary licensing requirements for the particular license as set forth in the sections of the Municipal Code governing the particular license, and that all laws and provisions of this Code regulating the business or occupation for which such license is ap-

---

**7.** The court does not reach the question of whether the plaintiff has a property right under Illinois law.

plied for, have been complied with, the Mayor *shall* authorize the issuance of the said license by the City Clerk.

*Id.* at ch. 101, § 5 (emphasis added).

The issuance of a liquor license is not, therefore, a matter solely within the discretion of the mayor. To the contrary, if an applicant fulfills the requirements of a particular license, the Code mandates that the mayor issue the license. *See id.* Consequently, assuming that the plaintiff had satisfied the criteria for obtaining a liquor license for The Keyes, the plaintiff was entitled to a license.[8] *Cf. Rehbock,* 458 F.Supp. at 1061 (the court found no property right where the Secretary of State had discretion to issue a restricted driver's permit).

■ Since the court has found that the plaintiff had a property right, the next questions are whether the plaintiff was deprived of that right and, if so, whether that deprivation occurred without due process of law. The plaintiff does not dispute that the liquor commission did approve his application for The Keyes. Instead, he argues that he was effectively deprived of his right because Joyce and others prevented him from applying for a license, and that when he did apply, approval was delayed unnecessarily. In his motion for summary judgment, Joyce cites no cases for the proposition that a delay cannot be a deprivation. Instead, he makes conclusory statements such as that "the alleged delay certainly [does] not rise to the level of a deprivation of due process." *See* Memorandum in Support of Joyce's Motion for Summary Judgment at 2. The court can-

not grant Joyce's motion solely on the basis of such statements.[9]

■ The plaintiff also alleges in his amended complaint that police harassment of customers at The Marquis and The Keyes effectively deprived the plaintiff of his right to use and enjoy his liquor licenses. *Citing Reed,* 704 F.2d at 949 (through harassment of customers, the defendants can deprive the plaintiff of his property right in a liquor license even though the license was never actually revoked). But the court has already concluded that insufficient evidence exists to create a genuine issue as to whether Joyce influenced the police to harass the plaintiff. *See supra* at 14. The court considers this issue to be resolved and therefore not triable. *See* Fed.R.Civ.P. 56(d). *See also Capital Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25, 29–30 (N.D.Ill. 1985) (Getzendanner, J.) (on a proper motion for summary judgment, the court can frame and narrow the issues for trial).

■ Finally, Joyce argues that the plaintiff has failed to prove that a conspiracy exists. A conspiracy, however, is not a necessary element for liability under Section 1983. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1255 n. 64 (7th Cir.1984). To establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky,* 105 S.Ct. at 3106. Joyce does not dispute that he committed the acts alleged in the amended complaint under the color of law, so the question of whether Joyce conspired with a state official to commit a violation of the plaintiff's constitutional

8. The court makes the finding that the general licensing provisions of the Code apply to liquor-license applications even though Chapters 101 and 147 have conflicting provisions. For example, the general licensing provisions provide that the Director of Revenue receive all applications, *see* Municipal Code of Chicago ch. 101, § 4 (1984), while Chapter 147 provides that the City Comptroller handle liquor-license applications. *See id.* at ch. 147, § 3. The court interprets the Code as providing that the general licensing provisions shall apply where specific licensing provisions of the Code are silent. As

already mentioned, Chapter 147 is silent on the question of mayoral discretion to issue licenses.

9. The parties should note the number of cases cited in this opinion that are not cited in any of the briefs. Close study of the case leads the court to believe that another motion for summary judgment which addresses the defects mentioned in this opinion may be appropriate. However, if Joyce provides the same degree of legal support in his next motion as he provided in this one, the court would be of a different belief.

rights is irrelevant. *Cf. Askew v. Bloemker,* 548 F.2d 673, 677–78 (7th Cir.1976) (the court suggested that *federal* officials could violate Section 1983 if they had conspired with state officials to commit the violation).

For the foregoing reasons, the court grants Joyce's motion for summary judgment on the equal protection claim, but denies the motion for summary judgment on the due process claim.

### B. The Foxes

The Foxes also move this court to grant them summary judgment, and argue that even if the court considers only the amended complaint they are entitled to summary judgment as a matter of law. If a motion for summary judgment is made solely on the basis of the complaint the motion is functionally equivalent to a motion to dismiss for failure to state a claim under Federal Rule 12(b)(6). 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.11[2] (2d ed. 1985). The complaint should be liberally construed in favor of the complainant, the facts alleged must be taken as true, and the motion must be denied if a claim has been pleaded. *Id.*

After consideration of the plaintiff's amended complaint, the court dismisses the Section 1983 claims against the Foxes. Private parties may be liable under Section 1983 where they have been jointly engaged with public officers in the denial of civil rights. *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980). It is not sufficient, however, merely to allege that the defendants acted in concert or with a common goal. *Id.* There must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding. *Id.* Even where such allegations are made, they must further be supported by some factual allegations suggesting such a "meeting of the minds." *Id.*

Aside from conclusory allegations calling the Foxes "conspirators" with Joyce and the other defendants, the plaintiff makes only two factual allegations regarding the Foxes. The first concerns Thomas J. Fox's threat to the plaintiff on June 30, 1977. The plaintiff alleges that Fox told the plaintiff that Fox was against the opening of The Keyes, and that if Fox told this to Joyce, The Keyes would never open. First Amended Complaint at ¶ 16. The plaintiff alleges Fox made this statement, then urged Joyce not to open The Keyes. Nowhere does the plaintiff allege facts which support his allegation that a "meeting of the minds" existed between Thomas J. Fox and Joyce or any other defendant.

With regard to Theresa Fox, the plaintiff alleges only that she urged Joyce to prevent The Keyes from opening. *Id.* at ¶ 25. This allegation suffers from the same defect as the allegations pertaining to Thomas J. Fox. The plaintiff simply has not made sufficient factual allegations to support his claim of a conspiracy.

For the foregoing reasons, the Foxes' motion for summary judgment is granted. Since the parties have not briefed the issue of whether this court should impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, the court denies the Foxes' motion for sanctions.

### C. Girsch

Finally, defendant Girsch also moves this court to grant her summary judgment on the grounds that she was merely a private person, and that therefore a conspiracy between her and a government official must be present before she can be liable under Section 1983. *See supra* at 22. Girsch argues that a conspiracy did not exist, and that consequently she is entitled to summary judgment.

The following facts are taken from the sworn testimony of Julia Girsch by deposition. Julia Girsch was Assistant to the Director of BAPA from May, 1977 until 1980. Girsch Deposition at 11. Prior to being employed with BAPA, Girsch had never met Joyce. *Id.* at 52. She did not know and had never spoken to Gavin and Dart. *Id.* at 70–71, 75. With regard to the plaintiff's bars, Girsch essentially did noth-

ing more than present her own and various citizens' views about those bars before the Liquor Commission, the Chicago Police Department, and Joyce. *Id.* at 71–89. These actions alone do not support the allegation that Girsch was "conspiring" with state officials to violate the plaintiff's rights. *See Scott v. Greenville County,* 716 F.2d 1409, 1424 (4th Cir.1983) (citizens who merely write letters, speak up at public meetings, or even express their prejudices at those meetings are not "conspiring" with public officials so as to subject themselves to Section 1983 liability). In light of the foregoing, the court finds that Girsch has satisfied her burden of establishing the lack of a genuine issue of material fact.

In his response, the plaintiff does not present any evidence to create a genuine issue of material fact. Aside from the facts already referred to, the plaintiff points to his own deposition where he testified that in a letter addressed to Joyce, Girsch misstated or misrepresented certain promises the plaintiff made. Mirshak Deposition at 189–205. This evidence does not, however, support the plaintiff's allegation that Girsch conspired with a state official to violate the plaintiff's rights.

Because the court finds that there is no genuine issue as to the question of whether Girsch conspired with a state official to violate the plaintiff's rights, the court grants Girsch's motion for summary judgment. Again, because the parties have not briefed the issue, the court denies Girsch's request for sanctions.

## II

### Gavin and Dart's Motion to Strike

Defendants Gavin and Dart move this court to strike Paragraphs 10 through 33 of the First Amended Complaint on the grounds that they are "a confusing melange of irrelevant, immaterial, repetitive, incompetent, conclusory and self-serving evidentiary recitations...." Motion to Strike at 2. They argue that the First Amended Complaint is not in accordance with federal notice pleading in that it contains factual and evidentiary matters which are improper under Rule 8 of the Federal Rules of Civil Procedure.

Gavin and Dart's understanding of Rule 8 is misguided. The federal rules require only a short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any difference whether the pleader accomplishes this by stating "conclusions," "ultimate facts," or "evidence." *See Littleton v. Berbling,* 468 F.2d 389, 394 (7th Cir.1972), *cert. denied,* 410 U.S. 935 (1973); 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 1218, at 141 (1985). The striking of a pleading as violative of the above principles is a matter within the sound discretion of the court, but as a general rule motions to strike are not favored. 2A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 8.13 (2d ed. 1985).

Moreover, because the plaintiff alleges that a conspiracy to violate his constitutional rights existed, he is required to make specific factual allegations to support his conspiracy claim. *See supra* at 23. If the plaintiff alleged a plethora of evidentiary details without a connecting thread with the result that the defendants could not decipher the statements in the claim for relief, *see* 5 Wright & Miller § 1218 at 138, the court would consider striking certain portions of the amended complaint. The allegations at issue in this case, however, are not so numerous as to cloud the basis of the plaintiff's claims. Instead, they serve the purpose they were intended to, i.e. they provide the defendants with fair notice of the content of the plaintiff's claims.

Consequently, the court denies the motion to strike and for sanctions and orders Gavin and Dart to answer the amended complaint within fifteen (15) days of the filing of this opinion.

## III

### Joyce, Gavin and Dart's Motion to Compel

On November 13, 1985, defendants Joyce, Gavin and Dart moved this court to compel the plaintiff to identify the damages they claim to have suffered as a result of the allegations in their amended complaint, to identify the basis for the amount of damages and to identify the expert the plaintiff intended to call at trial regarding damages. The court stayed ruling on the motion to compel until it ruled on the other motions pending in the case. Having ruled on those pending motions, the court grants the motion to compel. The court orders the plaintiff to provide the requested information within thirty (30) days of the filing of this opinion. The court denies the defendants' motion for expenses in presenting this motion.

## IV

### The Foxes' Motion for Sanctions

On April 25, 1986, the court stayed ruling on the Foxes' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The court now orders the plaintiff to respond to this motion within thirty (30) days of the filing of this opinion. The court gives the Foxes fifteen (15) days from the date of the filing of the response to reply.

### CONCLUSION

The court grants Joyce's motion for summary judgment on the equal protection claim, but denies the motion for summary judgment on the due process claim. The court also grants the Foxes' and Girsch's motions for summary judgment. The court denies Gavin and Dart's motion to strike and gives them fifteen (15) days to answer the amended complaint. The defendants' motion to compel is granted and the plaintiff is given thirty (30) days to respond. The briefing schedule for the Foxes' motion for sanctions is fixed according to the terms of this opinion.